

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2003

# In Re: Zenith Elec

Precedential or Non-Precedential: Precedential

Docket 02-2078

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"In Re: Zenith Elec " (2003). *2003 Decisions.* Paper 503.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/503

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 21, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-2078

———————

IN RE: ZENITH ELECTRONICS CORPORATION,
*Debtor*

———————

U.S. TRUSTEE

v.

THE OFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS
(District of Delaware Civil No. 99-cv-00747)

———————

U.S. TRUSTEE

v.

THE UNOFFICIAL COMMITTEE OF EQUITY SECURITY
HOLDERS
(District of Delaware Civil No. 00-cv-00399)

Donald F. Walton, Acting United
States Trustee For Region 3, *Appellant*

———————

On Appeal From the United States District Court
For the District of Delaware

(District Judge: Honorable Gregory M. Sleet)

———————

Argued April 7, 2003

Before: BECKER, *Chief Judge*,* BARRY and
BRIGHT,** *Circuit Judges.*

(Filed: May 21, 2003)

ROBERT D. McCALLUM, Jr.
Assistant Attorney General

COLM F. CONNOLLY
United States Attorney

WILLIAM KANTER
FRANK A. ROSENFELD
United States Department of Justice
Civil Division, Appellate Staff
601 D Street, NW
Washington, DC 20530-0001

P. MATTHEW SUTKO (Argued)
Office of the General Counsel
Executive Office for
 United States Trustees
20 Massachusetts Avenue, NW
Washington, DC 20530

JOSEPH J. McMAHON, JR.
United States Department of Justice
Office of the Trustee
844 King Street
Suite 2313, Lockbox 35
Wilmington, DE 19801

*Attorneys for Appellants*

---

* Judge Becker completed his term as Chief Judge on May 4, 2003.

** Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

HARLEY J. GOLDSTEIN (Argued)
Katten Muchin Zavis Rosenman
525 West Monroe Street
Suite 1600
Chicago, Illinois 60661

NORMAN L. PERNICK
J. KATE STICKLES
Saul Ewing, LLP
222 Delaware Avenue
Suite 1200
Wilmington, DE 19801

*Attorneys for Appellees*

## OPINION OF THE COURT

BECKER, *Circuit Judge*.

This appeal from the order of the District Court, dismissing the U.S. Trustee's (the "Trustee") appeal of the Bankruptcy Court's grant of certain professional fees and expenses incurred by the Unofficial Committee of Equity Security Holders (the "Unofficial Committee") in furtherance of its effort to have the Bankruptcy Court order the appointment of an official committee of equity security holders, presents important questions as to the scope of the equitable mootness doctrine. The District Court determined that the Trustee's appeal was equitably moot after analyzing the five prudential factors discussed in *In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (en banc)[hereinafter *Continental I*]. We conclude that the District Court abused its discretion in making that determination for a number of reasons, the most significant of which was its decision that the first and most important *Continental* factor, i.e., whether the reorganization plan had been "substantially consummated," favored a finding of equitable mootness, even though a successful appeal would have only a minor impact on and, at all events, could not result in the unraveling of the plan. As we explained in *Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001), the equitable mootness doctrine is to be

applied only in order to "prevent[ ] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract."

The District Court also abused its discretion in determining that even if equitable mootness does not apply to the Trustee's appeal, that appeal should be dismissed on the basis of "other equitable considerations." There is no jurisprudence in this Circuit that would allow a court to eschew exercise of its proper jurisdiction by refusing to entertain an appeal it has the power to hear on the basis of an ad hoc balancing of self-selected "equitable considerations," and we are not inclined to fashion such. We will therefore reverse the judgment of the District Court and remand for consideration of the Trustee's appeal.[1]

---

1. Appellees also assert that this appeal is constitutionally moot because the Unofficial Committee no longer exists and therefore this Court cannot grant "any effective relief" to the Trustee. *See In re Cantwell*, 639 F.2d 1050, 1053 (3d Cir. 1981). We have determined that an appeal is constitutionally moot "only if events have taken place that make it 'impossible for the court to grant any effectual relief whatever.' " *In re United Artists Theatre Co. v. Walton*, 315 F.3d 217, 226 (3d Cir. 2003) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). Such is not the case here. Without venturing into what the Trustee aptly characterizes as the "bevy of metaphysical questions" raised by what it means to dissolve an unofficial committee, we note that other parties to this appeal — the Professionals themselves (Katten Muchin Zavis Rosenman, Saul Ewing, and Ernst & Young) — clearly continue to exist, and by ordering them to disgorge the fees and costs at issue here, the Bankruptcy Court will be able to furnish some form of effectual relief to the Trustee, which is all that we require. In *Isidor Paiewonsky Assoc. v. Sharp Props., Inc.*, 998 F.2d 145, 151 (3d Cir. 1993), we concluded that as long as a court is in a position to grant one of the forms of relief requested, a case is not constitutionally moot. ("[W]hen a court can fashion '*some* form of meaningful relief,' even if it only partially redresses the grievances of the prevailing party, the appeal is not moot." *Id.* at 151 (quoting *Church of Scientology of Cal.*, 506 U.S. at 12)). Therefore, because the Bankruptcy Court can order the Professionals to disgorge the monies requested by the Trustee, the appeal is not constitutionally moot.

We also note that notwithstanding the confirmation order, the Bankruptcy Court specifically retained jurisdiction to act on "any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims. . . ," thereby retaining jurisdiction over the matter of the fees at issue in this appeal. Appellant's Supplemental Brief, Exhibit A, p. 27.

## I. Factual and Procedural Background

### A.

In August of 1999, the Zenith Electronics Corporation ("Zenith") filed a voluntary petition for bankruptcy under Chapter 11. The proposed reorganization plan was "prepackaged": the details had been negotiated in advance between Zenith and its principal shareholder, LG Electronics ("LGE"), which owned 58% of Zenith's stock and had lent millions of dollars to the company. The plan required, *inter alia*, cancelling Zenith's stock for no consideration, issuing new Zenith stock to LGE in return for $200 million in debt relief, exchanging $103 million in bonds bearing interest at 6.25% for $50 million in new bonds bearing interest at 8.19%, refinancing of bank debt, and an extension by LGE to Zenith of $60 million in new credit.

Zenith's minority shareholders, whose shares were to be canceled under the plan, objected. The largest of these shareholders, Nordhoff Investments, opted to represent its own interests, and the remaining minority shareholders formed an unofficial committee of equity security holders to represent them. Three days after the bankruptcy petition was filed, the Unofficial Committee moved the Bankruptcy Court to order the appointment of an official committee of equity security holders under 11 U.S.C. § 1102(a)(2). However, at an August 27, 1999 hearing, the United States Trustee objected to the formation of an official committee, arguing that such a committee was unnecessary, as the company was insolvent and the stock of all the potential committee members was to be canceled under the reorganization plan. The Bankruptcy Court rejected this argument and ordered the Trustee to appoint the official committee. The Trustee complied, but also appealed this decision and moved the District Court for a stay pending its appeal of the order appointing the official committee. The District Court denied a stay, and the appeal of the appointment order remained pending.

The Bankruptcy Court then held an expedited hearing on confirmation of the proposed reorganization plan. Central to

this hearing was a disagreement over the proper valuation of Zenith. Nordhoff and the Official Committee argued that the company was worth $1.05 billion, while the debtor's expert valued it at $300 million. The Bankruptcy Court agreed with the debtors, and on November 2, 1999, it approved the reorganization plan. The confirmation order included a provision dissolving all committees.

Ten days after the dissolution of the Official Committee, several professional advisors to the Unofficial and Official Committees, including two law firms and an accounting firm (the "Professionals"), applied for compensation and reimbursement of expenses out of the estate for work performed both for the Unofficial Committee in its efforts to obtain appointment of the Official Committee, and for the Official Committee after its September 8, 1999 formation. While Patricia Staiano, the Trustee, did not contest the fees sought for work on behalf of the Official Committee, she challenged the Professionals' request for fees relating to their work for the Unofficial Committee, arguing that this work did not meet the statutory requirement that the fee-seeking Professionals "make a substantial contribution" to the case. *See* 11 U.S.C. §§ 503(b)(3)(D), (b)(4). The Bankruptcy Court nonetheless granted the Professionals $76,500 in fees and $867.15 in expenses for their work for the Unofficial Committee, and $437,250 in fees and $85,024.45 in expenses for their work for the Official Committee. The Trustee appealed this fee order to the District Court.

## B.

The District Court dismissed the Trustee's appeal of the fee order on the basis of the doctrine of equitable mootness, under which "courts have held that '[a]n appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" *Continental I*, 91 F. 3d at 559 (quoting *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)*, 988 F.2d 322, 325 (2d Cir. 1993) [hereinafter *Chateaugay I*]. In coming to this conclusion, the District Court applied the

five-factor test for equitable mootness laid out by this Court in *Continental I.* The District Court held that the first two factors, whether the plan was substantially consummated and whether a stay was obtained, favored a finding of equitable mootness; that the third and fourth factors, whether the requested relief would affect the rights of parties not before the court or the success of the plan, militated against equitable mootness; and that the fifth factor, the public policy of affording finality to bankruptcy judgments, was "arguably neutral." *In re Zenith Electronics Corp.*, 2002 U.S. Dist. LEXIS 2369, \*12 (D. Del. 2002). Because the first two factors "are given great weight by the courts," the District Court concluded that while "quantitatively, the equitable mootness factors may weigh against dismissal, qualitatively, those that weigh in favor of dismissing the appeal outweigh those that do not." *Id.* at \*12, \*13.

In addition, relying on language from a decision of the Court of Appeals for the Ninth Circuit, *In re S.S. Retail Stores Corp.*, 216 F.3d 882 (9th Cir. 2000), the District Court determined that even if the Trustee's appeal is not equitably moot, the Court may nonetheless "exercise[ ] discretion to dismiss the appeal on equitable grounds." *In re Zenith Electronics Corp.*, 2002 U.S. Dist. LEXIS 2369, \*12. It then enumerated other equitable factors that weigh in favor of dismissal, including the fact that no other party had appealed the fee order, that the Equity Committee claimed that it had tried to resolve the issue through negotiation with the Trustee, but that the Trustee had rejected this attempt without explanation, and that fairness dictated the payment of fees. On the basis of its conclusions that equitable mootness applied to this case and that "other equitable considerations" also commanded that the appeal be dismissed, the District Court granted the Unofficial Committee's motion to dismiss the fee order appeal.

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(a) and (b) and the District Court had jurisdiction to hear the Trustee's appeal of the Bankruptcy Court's order under 28 U.S.C. § 158(a). This Court has jurisdiction under 28 U.S.C. § 158(d). We review the District Court's legal

determinations *de novo* and its factual determinations for clear error. *See In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999). Because the District Court's application of the equitable mootness doctrine "involves a discretionary balancing of equitable and prudential factors rather than the limits of the federal courts' authority under Article III," we review that decision for abuse of discretion. *Continental I*, 91 F.3d at 560.

## II. Equitable Mootness

### A.

The primary question raised by this appeal is whether the District Court properly applied the doctrine of equitable mootness in dismissing the Trustee's appeal. In general terms, equitable mootness dictates that an appeal should be dismissed, even if a court has jurisdiction and is in a position to grant relief, if " 'implementation of that relief would be inequitable.' " *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000)(quoting *Chateaugay I*, 988 F.2d at 325.) As we observed in *Continental I* and *PWS*, "the use of the word 'mootness' as a shortcut for a court's decision that the *fait accompli* of a plan confirmation should preclude further judicial proceedings has led to unfortunate confusion" between equitable mootness and Article III mootness. *Continental I*, 91 F.3d at 559. The latter concept applies to situations in which the Article III case or controversy requirement cannot be satisfied because circumstances are such that it is "impossible for the court to grant 'any effectual relief whatever,' " *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)(quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)), rather than situations in which a court is in a position to grant relief, but declines because to do so would lead to a perverse outcome.

In *Continental I*, we enumerated five factors "that have been considered by courts in determining whether it would be equitable to reach the merits of a bankruptcy appeal." 91 F.3d at 560. These include:

> (1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments.

*Id.* As we noted in *PWS*, "[t]hese factors are given varying weight, depending on the particular circumstances, but the foremost consideration is whether the reorganization plan has been substantially consummated." 228 F.3d at 236. We have also explained that the doctrine is "limited in scope" and must be "cautiously applied." *Continental I*, 91 F.3d at 559.

In *Continental I* and later cases, this Court has provided guidance for applying these prudential factors in evaluating whether equitable mootness is appropriate. This is particularly true of the crucial first factor. Specifically, we made clear, in both *Continental I* and *PWS*, that the first factor does not merely entail a formalistic inquiry into whether the plan has been substantially consummated under the definition in the Bankruptcy Code.[2] To be sure, satisfaction of the Bankruptcy Code definition is a first step in applying this factor, but it is not sufficient. In *Continental I*, for example, the plan had been substantially consummated under the Code definition; the investors' capital was in place and all elements of the plan had been completed. More significant to the Court's determination that the appeal was equitably moot, however, was the fact that "a reversal of the order confirming the Plan likely would put Continental back into bankruptcy." *Continental I*, 91 F.3d at 561. The Court's decision in that case, therefore, was based not merely on the fact that the plan had been substantially consummated in a definitional sense, but

---

2. The Bankruptcy Code defines "substantial consummation" as: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

rather on the probability that granting the appeal would unravel the plan, upon which numerous parties were at that point in reliance.[3]

*PWS* is especially instructive on this point. In that case, as in *Continental I*, the plan had been substantially consummated under the Code definition. W.R. Huff Asset Management Co. appealed the District Court's order confirming the plan on a number of grounds, including the fact that it contained releases that may have violated the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii). The debtors argued that Huff's appeal was equitably moot, because the reorganization had gone forward. As in *Continental I*, the key question addressed by the *PWS* panel was not simply whether the plan had been substantially

3. The airline had entered into an agreement in which investors had committed $450 million to the reorganized entity. One of the conditions to this agreement was a limitation on the amount and nature of liabilities and administrative expenses attributable to the reorganized company. Continental's expert testified at the confirmation hearing that if the Trustees' administrative claims, which totaled approximately $117 million, were allowed, the total amount of administrative claims against the reorganized company would exceed the "cap" set by the Investors, "allowing the Investors to walk away from the deal." *Continental I*, 91 F.3d at 563. The Trustees did not dispute the fact that if successful, their claims "would have given the Investors the option to withdraw," and that such withdrawal "would have placed the entire Plan in jeopardy." *Id.* at 564.

The size and intricacy of the plan weighed heavily in the *en banc* Court's determination that the Trustees' appeal was equitably moot. Specifically, "[w]ithout listing all . . . transactions set forth by Continental in its brief, we note that among those are the distribution to unsecured creditors, the merger of 53 debtors other than Continental with and into Continental, the investment of $110 million in cash by Air Partners and Air Canada in the reorganized Continental, the transfer by foreign governments of various route authorities, and the assumption by the reorganized Continental of unexpired leases and executory contracts worth over $5.0 billion." *Id.* at 567. It was the fact that the Trustees' appeal might have unraveled this extremely complex reorganization plan, rather than the formal substantial confirmation of the plan, that led the Court to conclude that there were "no prudential considerations that would support an attempt by an appellate court, district or court of appeals, to fashion even a limited remedy for the Trustees." *Id.* at 567.

consummated according to the Code definition, but rather whether "the appeal, if successful, would necessitate the reversal or unraveling of the entire plan of reorganization." 228 F.3d at 236.

Because the panel determined that a successful appeal would not " 'knock the props out from under the authorization for every transaction that has taken place,' " and that there were "intermediate options" short of undoing the entire plan, it declined to dismiss the appeal as equitably moot. *Id.* (quoting *In re Chateaugay Corp.*, 167 B.R. 776, 780 (S.D.N.Y. 1994)). The panel concluded that while "[t]he plan has been substantially consummated . . . the plan could go forward even if the releases were struck, and Huff's reply brief suggests that it now seeks only alterations to the plan rather than an unraveling of the reorganization." *In re PWS*, 228 F.3d at 236-37. *See also In re United Artists Theatre Co.*, 315 F.3d 217, 228 (3d Cir. 2003) (holding that the substantial consummation factor weighed against equitable mootness, despite the fact that the plan satisfied the Bankruptcy Code definition, because the relief sought "does not undermine the Plan's foundation").

This Court's decision in *Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180 (3d Cir. 2001), underscores the point. In that case, which also grew out of the Zenith bankruptcy before us now, Nordhoff challenged the reorganization plan on the ground that, *inter alia*, the Bankruptcy Court had relied on an incorrect valuation of Zenith's assets in approving the plan. In analyzing the substantial consummation factor, the panel began by observing that the Bankruptcy Code definition had been satisfied. The bulk of the panel's discussion, however, focused on the question whether the plan was so "simple" that it could be "easily reversed." *Id.* at 186. The Court concluded that

> Although the plan here is not as complex as the plan in *Continental Airlines*, it is hardly simple. The plan required eighteen months of negotiation between several parties regarding hundreds of millions of dollars, restructured the debt, assets, and management of a major corporation, and successfully rejuvenated Zenith. Appellants have not offered any evidence that

> the plan could be reversed without great difficulty and inequity, and we have reason to believe that the bond redistribution is unretractable.

*Id.* On the ground that the appeal, if successful, would unravel a fairly complicated reorganization plan, the *Nordhoff* Court upheld the District Court's decision that the substantial consummation factor favored a finding of equitable mootness.

The application of the four other prudential factors is straightforward, keeping in mind that the factors "are given varying weight, depending on the particular circumstances," and that the first factor is "foremost," especially " 'where the reorganization involves intricate transactions . . . or where outside investors have relied on the confirmation of the plan.' " *In re PWS*, 228 F.3d at 236 (quoting *Continental I*, 91 F.3d at 560-61). In applying these prudential factors, a court must remain mindful that the underlying purpose of the doctrine is to "prevent[ ] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." *Nordhoff*, 258 F.3d at 185.

## B.

In concluding that the Trustee's appeal was equitably moot, the District Court considered the five *Continental* factors, holding that the first two favored dismissal, the third and fourth favored allowing the appeal, and the fifth was neutral. We conclude that the District Court abused its discretion both in its consideration of the "substantial consummation" factor and in its overall application of the equitable mootness doctrine.

As explained above, the first, and most important factor does not call merely for a formalistic inquiry into whether the plan has been substantially consummated under the Bankruptcy Code definition. Rather, the critical question under the first factor is whether, if successful, the appeal might unravel the reorganization plan. As the District Court observed, it is clear that, in a definitional sense, the plan has been substantially consummated. By November 9,

1999, most of the relevant transactions were completed. This, however, was the extent of the District Court's discussion of this factor. In lieu of providing a complete analysis, the District Court referred to a more detailed explanation of why the plan was substantially consummated contained in a previous opinion regarding the Zenith bankruptcy. *In re Zenith Electronics Corp.*, 2002 U.S. Dist. LEXIS 2369, *8-9 (D. Del. 2002).

In that opinion, *In re Zenith Electronics Corp.*, 250 B.R. 207, 214 (D. Del. 2000), the Court did deal with this factor in more detail, noting that while reversal of aspects of the reorganization plan was "feasible," the bond exchange presented "a more difficult problem." The Court concluded that "there is no question that the Plan has been substantially consummated. Although some of the Plan transactions could conceivably be 'reversed,' this would not be easy to accomplish, and other transactions may not be reversible at all." *Id.* The problem with borrowing the analysis from this related case and applying it to the case at bar is that the circumstances of the two cases are crucially different. In the earlier case, Nordhoff's appeal, if successful, would have required unraveling the reorganization plan. The same cannot be said of the Trustee's appeal. Here, the Trustee seeks the disgorgement of $76,500 in professional fees, a tiny sum in the context of the reorganization of a company valued at $300 million. Far from causing the reorganization plan to unravel, the Trustee's appeal, if successful, would return money to the estate. Just as in *PWS*, a successful appeal in this case would not "knock the props out from under the authorization for every transaction that has taken place," and in fact would leave the plan entirely intact.

We therefore conclude that the District Court abused its discretion in determining that the "substantial consummation" factor favored dismissing the appeal as equitably moot. While the Court properly applied the remaining factors, the fact that it erred in applying the first factor, which is "foremost," led it wrongly to conclude that the appeal was equitably moot. Because only the second factor, whether a stay was obtained, even arguably favors a finding that the appeal is equitably moot, a proper

balancing of the five factors necessitates allowing the appeal.[4] We come to this determination not only on the basis of the individual factors themselves, however, but also because the underlying purpose of the equitable mootness doctrine, which exists to "prevent[ ] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract," is not implicated here. *Nordhoff*, 258 F.3d at 185.

### III. The Impact of "Other Equitable Considerations"

In addition to finding it equitably moot, the District Court provided an alternate ground for its dismissal of the Trustee's appeal, holding that "other equitable considerations" dictate dismissal as well. In coming to the conclusion that even if equitable mootness does not apply here, the appeal should be dismissed, the District Court relied on the decision of the Court of Appeals for the Ninth Circuit in *In re S.S. Retail Stores Corp.*, 216 F.3d 882 (9th Cir. 2000). In that case, which also concerned an appeal for the disgorgement of attorney's fees, the Court held that

---

4. The "stay" factor cannot be given much weight in our consideration of this case because, as the Trustee's appeal would not necessitate an unraveling of the plan, there was little reason for the Trustee to have requested a stay. As one Court has noted, the "stay" factor is "largely duplicative of the 'substantial confirmation' factor . . . ," *In re Zenith Electronics Corp.*, 250 B.R. 207, 214 (D. Del. 2000), in the sense that a plan cannot be substantially consummated if the appellant has successfully sought a stay. Therefore, the "stay" factor is designed to safeguard the same interests as the "substantial consummation" factor and should only weigh heavily against the appellant if, by a failure to secure a stay, a reorganization plan was confirmed, the existence of which is later threatened by the appellant's appeal. That is not the situation here.

As for the remaining *Continental* factors, the District Court correctly concluded that the third and fourth factors — whether the requested relief would affect the rights of parties not before the court or would impact the success of the plan — militated against a finding of equitable mootness, while the fifth factor, the public policy of affording finality to bankruptcy judgments, was "arguably neutral." *In re Zenith Electronics Corp.*, 2002 U.S. Dist. LEXIS 2369, *9-11 (D. Del. 2002).

even if equitable mootness does not apply in a particular situation, "a court may still hold that the equities weigh in favor of dismissing the appeal." *Id.* at 885. In an analysis separate from its equitable mootness discussion, the *S.S. Retail* Court found that "it would be inequitable to require [the attorneys] to disgorge the bankruptcy court's award of fees and expenses," and dismissed the appeal on that ground. *Id.* In so doing, the Court declined to reach the merits of Trustee's argument that the debtor's attorney was not a "disinterested person," as required by 11 U.S.C. § 101(14), and therefore should never have been employed as the Debtor's counsel.

While the District Court relied on the logic of *S.S. Retail Stores,* that case does not represent the law of this Circuit. It is a general rule that when a court has jurisdiction to hear an appeal, it has a "virtually unflagging obligation" to exercise that jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Continental I*, 91 F.3d at 568 (Alito, J., dissenting). The doctrine of equitable mootness carves out an exception to this general rule, but it is a very limited and well-defined exception. The doctrine has been carefully developed to apply only in that rare situation in which a successful appeal would undo a complicated plan of reorganization. It would make little sense, in light of this carefully considered doctrine, and in light of our "virtually unflagging obligation" to exercise our jurisdiction, to allow courts to dismiss appeals on the basis of an ad hoc weighing of the equities of a successful appeal. Therefore, we conclude that to the extent that the District Court relied on "other equitable considerations," outside of those it took into account in its equitable mootness discussion, to dismiss the Trustee's appeal, it abused its discretion.[5]

---

5. We are also unconvinced of the merit of the other equitable considerations relied upon by the District Court. We cannot see how the facts that no other party appealed the fee order, that the Trustee failed to explain why she declined to negotiate a solution to this problem with the Equity Committee, or that, under some circumstances, fairness may dictate the payment of fees, could weigh so heavily against the Trustee that a court would decline to entertain her appeal, despite its power to hear it.

The judgment of the District Court will be reversed and the case remanded for further proceedings.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals for the Third Circuit*