

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-1-2006

# In Re: SLI Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4231

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: SLI Inc " (2006). *2006 Decisions*. Paper 1495.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1495

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4231

IN RE: SLI INC.; CHICAGO MINIATURE OPTOELECTRONIC
TECHNOLOGIES INC.; ELECTRO-MAG INTERNATIONAL INC;
CHICAGO MINIATURE LAMP SYLVANIA LIGHTING
INTERNATIONAL, INC.; SLI LIGHTING PRODUCTS, INC.;
SLI LIGHTING COMPANY; SLI LIGHTING SOLUTIONS, INC.
and CML AIR INC.,
Debtors

OSRAM SYLVANIA, INC.,
Appellant

v.

SLI, INC., CHICAGO MINIATURE OPTOELECTRONIC
TECHNOLOGIES, INC.; ELECTRO-MAG INTERNATIONAL, INC.;
CHICAGO MINIATURE LAMP SYLVANIA LIGHTING INTERNATIONAL,
INC., SLI LIGHTING PRODUCTS, INC., SLI LIGHTING COMPANY, SLI
LIGHTING SOLUTIONS, INC., and CML AIR, INC.

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 03-cv-00729)
District Judge: Honorable Kent Jordan

Argued January 26, 2006
Before: RENDELL and SMITH, Circuit Judges,
and IRENAS*, District Judge.

* Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting
by designation.

Martin J. Weis
Dilworth Paxson
1735 Market Street
3200 The Mellon Bank Center
Philadelphia, PA 19103

Albert Solochek     [ARGUED]
Howard, Solochek & Webber
324 East Wisconsin Avenue
Suite 1100
Milwaukee, WI 53202
   *Counsel for Appellant*

William H. Sudell, Jr.     [ARGUED]
Daniel B. Butz
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
   *Counsel for Appellees*

OPINION OF THE COURT

RENDELL, <u>Circuit</u> <u>Judge</u>

Osram Sylvania, Inc. ("OSI"), an unsecured creditor of SLI, Inc. and certain affiliates ("SLI" or "Debtor"), appeals from the District Court's dismissal of its appeal of the Bankruptcy Court's order of confirmation of the Debtor's plan of reorganization. The District Court dismissed the appeal on the grounds of equitable mootness. Because we find that the District Court did not abuse its discretion in applying equitable mootness

to dismiss OSI's case, we will affirm.

## I.

On September 9, 2002, SLI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. On May 15, 2003, SLI filed a Second Amended Joint Plan of Reorganization (the "Plan") and related disclosure statement. The Bankruptcy Court approved the disclosure statement and fixed June 19, 2003 as the date to consider confirmation of the Plan.

OSI was a prepetition unsecured creditor of SLI, holding a claim in the approximate amount of $500,000. At the confirmation hearing, OSI objected to the Plan's feasibility and to the scope of the releases, injunctions, and exculpation and limitation of liability provisions it contained. In addition, OSI argued that the Plan did not adequately disclose the counterclaims SLI might assert against OSI, in violation of a May 13, 2003 order of the Bankruptcy Court requiring such disclosure. SLI stated in court filings only that it had counterclaims against OSI in "unknown" amounts. Despite OSI's objections, the Bankruptcy Court approved the Plan in a June 19, 2003 confirmation order (the "Confirmation Order") and set June 30, 2003 as the effective date of the Plan.

On the effective date, participants who elected to take part invested $26 million in equity in the Reorganized SLI. The Reorganized SLI entered into a term loan agreement with several institutional investors (the "Investors") and received $20 million. The sum

of $20 million was paid to the DIP loan provider and all liens securing the DIP loan were discharged. The stock of SLI was cancelled and delisted and the Reorganized Debtor was incorporated. All of the interests in the Reorganized Debtor were distributed to Plan participants. A litigation trust was formed and the sum of $1,475,000 was transferred to the trust. The sum of $2,370,451 was paid under the key employee retention plan in exchange for releases from the Plan. Since the effective date, SLI has also entered into a new, secured loan agreement with Bank of America, replacing the term loan, which was repaid in full.

When OSI appealed the Confirmation Order to the District Court, SLI moved to dismiss on the grounds of equitable mootness. In an October 5, 2004 order, the District Court granted the motion to dismiss. OSI timely filed this appeal. We have jurisdiction under 28 U.S.C. § 158(d) to review the District Court's order dismissing OSI's appeal.

## II.

Because the mootness determination we review here involves a discretionary balancing of equitable and prudential factors, we review the District Court's decision for abuse of discretion. *In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (*Continental I*). We accept the District Court's findings of fact unless they are clearly erroneous. *Nordhoff Invs. Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 182 (3d Cir. 2001).

"Under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief

4

would be inequitable." *In re PWS Holding Corp.*, 228 F.3d 224, 235-236 (3d Cir. 2000). "In effect, the equitable mootness doctrine prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." *Nordhoff*, 258 F.3d at 185.

We have identified five prudential factors that we evaluate to determine if a bankruptcy case is equitably moot:

> (1) whether the reorganization plan has been substantially consummated,
> (2) whether a stay has been obtained,
> (3) whether the relief requested would affect the rights of the parties not before the court,
> (4) whether the relief requested would affect the success of the plan, and
> (5) the public policy of affording finality to bankruptcy judgments.

*Nordhoff*, 258 F.3d at 185. District courts have the discretion to give varying weight to these five factors, depending on the particular circumstances of the case before them. *PWS*, 228 F.3d at 236; *Continental I,* 91 F.3d at 560. We have noted, however, that the doctrine of equitable mootness "is limited in scope and should be cautiously applied." *PWS*, 228 F.3d at 236.

## III.

Though the district courts have the discretion to give varying weight to the five factors for equitable mootness, a court's "foremost consideration" must be whether the reorganization plan has been substantially consummated. *PWS*, 228 F.3d at 236. "This

is especially so where the reorganization involves intricate transactions, or where the outside investors have relied on the confirmation of the plan." *Continental I,* 91 F.3d at 560-61 (citations omitted). We agree with the District Court that the Plan has been substantially consummated and that, if successful, OSI's appeal would unravel the Plan. *See In re Zenith Elecs. Corp.*, 329 F.3d 338, 346 (3d Cir. 2003). All of the property required to be transferred under the Plan has been transferred, 11 U.S.C. § 1101(2)(A), the Reorganized Debtor has assumed the management of the Debtor's business, *id.* § 1101(2)(B), and all distributions required to be made under the Plan have been made, *id.* § 1101(2)(C). Furthermore, the stock of SLI was cancelled and new equity was issued for the Reorganized Debtor. OSI contends that the Plan has not been substantially consummated because the litigation trust and professional fee transfers were placed in escrow, rather than directly distributed. The escrowed property, however, is irrelevant for purposes of this analysis because it was irrevocably transferred in accordance with the Plan.

The second factor also weighs in favor of applying equitable mootness to OSI's appeal. Our previous cases in this area leave no doubt that an appellant risks the application of equitable mootness if it fails to obtain a stay of execution of the objectionable order. *Nordhoff*, 258 F.3d at 186-87. OSI "never applied for a stay and ha[s] not provided an adequate explanation for [its] failure to do so." *Nordhoff*, 258 F.3d at 191-92 (Alito, J., concurring). Though the failure to seek a stay is not necessarily

6

fatal, *In re United Artists Theatre Co.*, 315 F.3d 217, 228 (3d Cir. 2003), it undoubtedly "weighs heavily in favor of the [D]istrict [C]ourt's declination to delve into the merits of [OSI's] appeal," *Continental I*, 91 F.3d at 562.

The potential harm to third parties from an appeal, measured under the third factor, is central to whether the relief OSI seeks would be inequitable. *Id.* OSI argues that there was little evidence in the record to substantiate a claim that the relief requested would affect the rights of parties not before this Court. We disagree. The record shows that there are several parties not before us whose rights would be affected by this appeal, including new lenders, new contracting parties, new secured interest holders, new senior management, and new unsecured creditors. In addition, numerous liens have been released against SLI by secured creditors in reliance on the Plan. Thus, we cannot find that the District Court abused its discretion by weighing this factor in favor of equitable mootness.

With respect to the fourth factor, OSI acknowledges that its request for a full reversal of the Plan would "knock the props out from under" it. *Zenith*, 329 F.3d at 346. OSI therefore proposes three forms of alternative relief that it believes would fix the Plan without altogether unraveling it: (1) striking the releases and exculpation provisions; (2) barring SLI from asserting claims against OSI that arose prior to confirmation but were not disclosed in the Plan; and (3) remanding with instructions that the Plan be confirmed in an order that is consistent with Official Form 15. OSI did not object to the form of the

7

Confirmation Order before the Bankruptcy Court.

As an initial matter, we note that the Confirmation Order stated that its provisions, as well as those of the Plan, were "non-severable and mutually dependent." This undoubtedly militates against the partial modification of the Plan that OSI proposes. Setting this problem aside though, each form of intermediate relief OSI proposes would impair the success of the Plan.

The District Court found that the releases by the Debtor and the Investors were consideration for an investment of $20 million and a conversion of $325 million in claims to equity. The record supports this factual finding. *See* Confirmation Order ¶ 27 at R-397-98 (noting that the releases are essential to implementing the Plan and important to its overall objectives). Because they are consideration for investment that was crucial to the Plan, the releases form an "'integral nexus' with the feasibility of the . . . plan of reorganization." *In re Continental Airlines*, 203 F.3d 203, 209 (3d Cir. 2000) (*Continental II*). Likewise, OSI's request that the Bankruptcy Court issue a new confirmation order consistent with Form 15 is akin to a full reversal because it requires the entirety of the Confirmation Order to be stricken.

OSI's other request – that SLI be prohibited from asserting counterclaims against OSI that it did not disclose in the Plan – is simply not a valid "intermediate option" to reversing the entire Plan. *PWS*, 228 F.3d at 236. There is no authority under which we would preemptively strike future counterclaims SLI may have against OSI simply

because SLI could not identify them more specifically in its disclosure. SLI did not consciously attempt to hide the counterclaims, *see Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corporation*, 337 F.3d 314, 322-23 (3d Cir. 2003), or solicit the support of the creditors generally, or OSI in particular, without disclosing the potential for counterclaims against OSI, *see Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 418 (3d Cir. 1988). And given that SLI will only assert the "unknown" counterclaims if OSI initiates litigation against it, we cannot see how OSI would be unfairly surprised by the counterclaims. Under these circumstances, there is no basis for modifying the Plan in the way OSI suggests.

Finally, the District Court did not abuse its discretion in holding that the fifth factor weighed in favor of dismissing the case. "[T]he importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine." *Continental I*, 91 F.3d at 565. OSI argues that there are competing policy concerns that should take priority here, including full disclosure in bankruptcy cases, reluctance to discharge obligations of non-debtors, and respect for prior court decisions. OSI has not persuaded the Court that these policy objectives outweigh our interest in promoting the finality of the bankruptcy judgment at issue here.

## IV.

We agree with the District Court's determination that all five prudential factors we

9

evaluate to determine if a bankruptcy case is equitably moot weigh in favor of dismissing OSI's appeal.  Because the District Court did not abuse its discretion in holding the case equitably moot, we will affirm.