UNITED STATES of America,
Petitioner and Appellee,

v.

LEE, GODDARD & DUFFY, LLP, and
William A. Goddard, Respondents
and Appellants.

No. SA CV 06–408 DOC.

United States District Court,
C.D. California.

March 12, 2008.

Paul S. Ham, Stuart D. Gibson, U.S. Department of Justice, Washington, DC, Sandra R. Brown, AUSA–Office of U.S. Attorney, Los Angeles, CA, for Petitioner and Appellee.

Bradley A. Patterson, LGI LLP, Irvine, CA, Harvinder Singh Anand, John Steven Gordon, Quinn Emanuel Urquhart Oliver and Hedges, Los Angeles, CA, for Respondents and Appellants.

*ORDER DENYING MOTION FOR STAY PENDING APPEAL OF DISTRICT COURT'S ORDER DATED NOVEMBER 20, 2007, REQUIRING RESPONDENTS TO PRODUCE ADDITIONAL DOCUMENTS PURSUANT TO IRS SUMMONS*

DAVID O. CARTER, District Judge.

Before the Court is Respondents' and Appellants' Motion for Stay Pending Appeal of District Court's Order Dated November 20, 2007, Requiring Respondents to Produce Additional Documents Pursuant to IRS Summons ("Motion"). After considering the moving, opposing, and replying papers, as well as oral argument by the parties, the Court hereby DENIES Respondents' Motion.

## I. BACKGROUND

The IRS brought an enforcement action on April 18, 2006 against Respondents Lee, Goddard & Duffy, LLP ("LGD") and William A. Goddard ("Goddard") (collectively, "Respondents"). The IRS is investigating LGD and Goddard for potential promoter penalties under 26 U.S.C. §§ 6707 and 6708 to determine whether they are liable for penalties for failure to timely register certain tax shelters and for failing to maintain a list of investors in these tax shelters as 26 U.S.C. §§ 6111 and 6112 require.

Specifically, the IRS suspects that LGD and Goddard were involved with abusive tax shelters that the accounting firm KPMG LLP ("KPMG") promoted. Documents that the IRS obtained from KPMG identified LGD and Goddard as having promoted and facilitated several potentially abusive tax shelters. This documentation identified 65 investors linked to LGD and Goddard who participated in the abusive tax shelters KPMG marketed.

Based on this and other evidence, the IRS served summons on LGD and Goddard that would require them to produce documents related to their involvement in the tax shelters KPMG marketed. LGD and Goddard did not comply with these summons, prompting the IRS to file the petition in this case. The Court issued an Order to Show Cause why the testimony and production of the documents requested in the IRS summons should not be compelled on April 19, 2006, and Respondents filed such a response on May 8, 2006. After receiving a reply memorandum from the Government and hearing oral argument on the matter, the Court issued a Minute Order on June 29, 2006 granting the IRS's petition to enforce the internal revenue summons at issue. In its Minute Order, the Court gave Respondents thirty days from the date of that order to comply with the IRS summons.

Between July 2006 and January 2007, LGD produced approximately 10,000 pages of documents responsive to the summons issued to it and Goddard asserted that he did not possess any responsive documents. The IRS was concerned that Respondents had not produced all responsive documents and indicated as such in a letter to Respondents' counsel on February 5, 2007. The parties' attorneys exchanged letters for approximately four months disputing whether LGD had complied in full with the Court's order enforcing the summons and debating the appropriate means for resolving the dispute. On July 23, 2007, the Court held a status conference regarding this dispute. During this status conference, the parties reached a resolution about how to present the dispute to the Court for resolution. As per that resolution, the parties submitted briefing on the remaining responsive documents sought by the IRS and presented oral argument in a hearing on November 19, 2007 regarding the Petitioner's Demand that Respondents Produce Additional Documents.

In its February 2007 letter, the IRS requested documents pertaining to the 24 remaining clients having indirect or direct participation with Respondents in tax shelter transactions for whom Respondents have not produced any responsive material. The IRS subsequently withdrew its request for documents as to four of the clients. On November 20, 2007, the Court issued an Order Enforcing Petitioner's Demand that Respondents Produce Additional Documents as Directed by Order Dated June 29, 2006. Respondents were ordered to produce the responsive documents pertaining to transactions in which the remaining twenty clients were involved.

Respondents have appealed the Court's November 20, 2007 Order to the Ninth Circuit Court of Appeals. In the instant Motion, Respondents request that the Court stay enforcement of the Order pending a determination of the issues by the Court of Appeals.

## II.  LEGAL STANDARD

Generally, a district court loses its jurisdiction to resolve issues in a case once an appeal is taken by one of the parties. However, an exception exists under Rule 62(c) to "suspend, modify, restore, or grant an injunction" while an appeal is pending to "secure the opposing party's rights." Rule 62(c); *see Mayweathers v. Newland,* 258 F.3d 930, 935 (9th Cir.2001).

To be granted a stay of injunctive relief pending appeal, a prospective appellant must show "a great likelihood that he will prevail when the case finally comes to be heard on the merits and must show irreparable injury from a denial of interim relief." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2904 (2d ed., 1995). The Court considers the same criteria as the traditional equitable criteria for granting preliminary injunctive relief,

which are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the moving party if the stay is not granted; (3) a balance of hardships favoring the moving party; and (4) advancement of the public interest. *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980).

■ Under Ninth Circuit law, the moving party may meet its burden by showing either (1) a probability of success on the merits and the possibility of · irreparable injury; or (2) "that serious legal questions are raised and that the balance of hardships tips sharply in [the movant's] favor." *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983).

## III. DISCUSSION

In the present circumstances, the balancing factors weigh against granting a stay pending appeal. The Court considers the factors in turn.

### A. Merits of the Appeal

■ On appeal, the Ninth Circuit applies "a functional approach to mixed questions of law and fact which 'focuses on the nature of the inquiry required when we apply the relevant rule of law to the facts.'" *Ponsford v. U.S.,* 771 F.2d 1305, 1307 (9th Cir.1985) (citing *United States v. McConney,* 728 F.2d 1195 (9th Cir.1984)). Under this functional approach the standard of review is as follows:

> If the inquiry is 'essentially factual' then concerns of judicial administration and the proximity of the district court to the factfinding process favor application of the clearly erroneous standard. [citation]. On the other hand, if the inquiry focuses on legal concepts and the policies underlying those concepts then the primacy of the appellate court in determining legal questions favors *de · novo* review.

*Id.* In its November 20, 2007 Order, the nature of the Court's inquiry into mixed questions of law and fact was essentially factual. Specifically, the Court determined, based on the evidence, that the material sought by the IRS was within the scope of the IRS summons previously enforced by the Court and constituted information pertaining to tax shelter transactions as contemplated in the prior summons. The Court further made a factual determination that Respondents had failed to show bad faith or an improper purpose on the part of the IRS. These factual determinations are the central issues of Respondents' appeal. Thus, the clearly erroneous standard will apply.

■ Furthermore, the IRS' burden to enforce the summons was initially a slight burden that could be satisfied by a declaration from the investigating agent. *Crystal v. United States,* 172 F.3d 1141, 1141 (9th Cir.1999). In order to avoid enforcement of the summons, the Respondents faced a very heavy burden and were required to allege "specific facts and evidence to support [their] allegations of bad faith or improper purpose." *Id.* at 1144. The Court found that the IRS had met its burden with respect to enforcement of the summons and with respect to the inclusion of the disputed documents in the scope of the IRS summons. The Court further found that Respondents had failed to meet their burden to avoid enforcement of the summons or demonstrate that the disputed documents were not contained within the scope of the IRS summons. This conclusion was supported by the declaration of Agent Boice that Respondents had engaged in the practice of making insignificant changes to existing tax shelters which "change[d] the appearance—but not the substance—of the underlying tax shelter transactions." Boice Decl. in Support of Petitioners' Demand ¶ 5(b). The Court made its determination by taking into ac-

count the evidence, as well as the arguments about the transactions presented by both parties.

In light of the slight burden for the IRS, the heavy burden for Respondents, the evidence on the record, and the clearly erroneous appellate standard of review, the Court finds that the probability of success on the merits of the appeal is minimal. Accordingly, this factor weighs in favor of denying the stay pending appeal.

**B. Possibility of Irreparable Injury**

At the outset, the Court notes, as stated by Respondents, that privileged documents "can be withheld under a claim of privilege" and that, absent a stay of the Court's Order, "Respondents will be obligated to ... produce the non-privileged Client documents at issue." Respondents' Mot. at 2–3. Thus, the relevant question on appeal is not whether the privilege applies, but is instead whether the categories of documents to be produced fall within the scope of the IRS summons previously enforced.

Respondents have argued that irreparable harm will result if a stay pending appeal is not granted for three reasons: (1) Constitutional impairment of clients' First Amendment rights to consult with counsel; (2) intrusion into clients' personal financial affairs resulting in irreparable violation of clients' rights to financial privacy; (3) the inability for the Ninth Circuit to grant complete relief if it finds that the production of the documents was not required.

First, the Court notes that the first two arguments do not set forth irreparable harm that would be suffered by the Respondents as the moving party. However, even if these alleged harms are attributable to Respondents, they are insufficient to justify imposition of a stay pending appeal.

The Ninth Circuit has recognized that "-at least as a general matter-the 'right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association, and petition." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (9th Cir.2005) (citing *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir.2000)). Respondents argue that this right will be chilled if a stay is not granted. However, where, as here, disputed documents are found to fall within the scope of enforceable IRS summons pertaining to tax shelter transactions, the Court finds that Respondents' argument fails. Clients still have every right to hire and consult an attorney; the Court's holding simply means that non-privileged documents pertaining to properly enforceable IRS summons may be subject to production to the IRS. Furthermore, under 26 U.S.C. § 7602, the IRS is given the "power to 'examine any books, papers, records or other data which may be relevant ... (and to summon) any person having possession ... of books of account ... relevant or material to such inquiry.'" *U.S. v. Bisceglia*, 420 U.S. 141, 145–146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). "Although such investigations unquestionably involved some invasion of privacy, they are essential to our self-reporting system, and the alternatives could well involve far less agreeable invasions of house, business and records." *Id.* at 146.

Finally, if production of the documents is required, the Ninth Circuit will not be able to return the parties to the "*status quo ante*-there is nothing a court can do to withdraw all knowledge or information that the IRS agents may have acquired." *Church of Scientology of Cal. v. U.S.*, 506 U.S. 9, 12–13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). However, the Ninth Circuit would be able to "effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may

have in its possession" if it found that the Court's Order was clearly erroneous. *Id.* at 13, 113 S.Ct. 447. Thus, the availability of the partial remedy would minimize potential harm that would result. Furthermore, the potential harm is only that resulting from the disclosure of the responsive non-privileged documents. This potential harm is minimal compared to the harm that might result if the disclosure of privileged documents was also required. The Court finds that the potential harm is not sufficient to justify a stay pending appeal, where the Order requires Respondents to comply with enforceable IRS summons and produce non-privileged, responsive documents.

### C. Balance of Hardships

The balance of hardships does not tip sharply in one or the other party's favor. On the one hand, if a stay is granted, it would add significant delay to a process that has already taken the IRS nearly three years. The IRS seeks to obtain documents from Respondents in order to determine whether to assert penalties under 26 U.S.C §§ 6111 and 6112. As more delay occurs, witnesses may die, leave the country, or otherwise become unavailable for interview, memories will fade, and documents may no longer exist. On the other hand, there is some hardship incurred by Respondents resulting from the potential harm that may be incurred by production of the documents if that production was clearly erroneous. Furthermore, as indicated by Respondents, production of the documents may place them in a less than desirable position with respect to the clients. Respondents further argue that the IRS should seek the documents from the clients directly. However, there is no requirement for the IRS to take this approach, particularly where it is LGD itself that is being investigated.

### D. Public Interest

■ Finally, the public interest weighs in favor of denying the Motion. Specifically, a stay pending appeal would deny the public its strong interest in having the IRS promptly complete tax investigations. As explained in one case, "a stay would be contrary to public interest which necessitates expedient resolution of tax litigation: intervenors have already successfully frustrated the impending IRS investigation for over two years." *U.S. v. City Bank,* 527 F.Supp. 523, 527 (N.D.Ohio 1981). Here, Respondents have frustrated the impending investigation for almost three years, and a stay pending appeal would add significantly more time to that delay. Furthermore, the Court concludes that the IRS is not "recklessly invading the Clients' right to privacy" through its summons and investigation, as argued by Respondents, and that work product will not be "unfairly usurped by the government" through enforcement. *See* Respondents' Mot. at 7:16–23.

### E. Conclusion

In sum, Respondents have not shown that a stay pending appeal should be granted under the relevant factors. Accordingly, the Court denies Respondents Motion for a stay pending appeal.

## IV. DISPOSITION

Respondents' Motion is hereby DENIED. The Court declines to stay the Order dated November 20, 2007, requiring Respondents to produce additional documents pursuant to IRS summons. However, the Court gives Respondents until April 25, 2008 to comply with the Court's November 20, 2007 Order.

IT IS SO ORDERED.