CHURCH OF SCIENTOLOGY OF CALIFORNIA *v.*
UNITED STATES ET AL.

No. 91–946.   Argued October 6, 1992—Decided November 16, 1992

STEVENS, J., delivered the opinion for a unanimous Court.

*Eric M. Lieberman* argued the cause for petitioner. With him on the briefs were *David B. Goldstein, Hillary Richard,* and *Michael Lee Hertzberg.*

*Deputy Solicitor General Wallace* argued the cause for the respondents. With him on the brief were *Solicitor General Starr, Acting Assistant Attorney General Griffin, Kent L. Jones, Charles E. Brookhart,* and *John A. Dudeck, Jr.*

JUSTICE STEVENS delivered the opinion of the Court.

Two tapes recording conversations between officials of the Church of Scientology (Church) and their attorneys in July 1980 have been the principal bone of contention in this, and two earlier, legal proceedings.

In an action filed in the Los Angeles County Superior Court,[1] the Church contended that the defendant had unlawfully acquired possession of the tapes. Pending resolution of that action, the state court ordered its Clerk to take custody of the tapes and certain other documents.

In 1984, in connection with an investigation of the tax returns of L. Ron Hubbard, founder of the Church of Scientology, the Internal Revenue Service (IRS) sought access to the Church documents in the state-court Clerk's possession.[2]

---

[1] *Church of Scientology of California* v. *Armstrong,* No. C420 153.

[2] The Commissioner of Internal Revenue, as the delegate of the Secretary of the Treasury, has broad authority to examine the accuracy of federal tax returns. See generally *Donaldson* v. *United States,* 400 U. S. 517, 523–525 (1971). Section 7602(a) of the Internal Revenue Code authorizes the Secretary to summon any person to provide documents relevant to such an examination:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any per-

After the Clerk was served with an IRS summons, he permitted IRS agents to examine and make copies of the tapes. Thereafter, in a federal action initiated by the Church in the Central District of California, the District Court entered a temporary restraining order directing the IRS to file its copies of the tapes, and all related notes, with the federal court.[3] Those copies were subsequently returned to the Clerk of the state court.

On January 18, 1985, the IRS commenced this proceeding by filing a petition to enforce the summons that had previously been served on the state-court Clerk.[4] The Church intervened and opposed production of the tapes on the ground that they were protected by the attorney-client privilege. After protracted proceedings, including review in this Court, see *United States* v. *Zolin*, 491 U. S. 554 (1989), on April 15, 1991, the District Court entered an order enforcing compliance with the summons. The Church filed a timely notice of appeal and unsuccessfully sought a stay of that order. While the appeal was pending, copies of the tapes were delivered to the IRS. Thereafter, the Court of Appeals ordered the Church to show cause why its ap-

---

son for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry." 26 U. S. C. § 7602(a).

[3] *Church of Scientology* v. *Armstrong*, No. CV 84–9003–HLH (CD Cal., Nov. 27, 1984).

[4] Sections 7402(b) and 7604(a) confer jurisdiction on the federal district courts to enforce a summons issued by the IRS. Title 26 U. S. C. § 7402(b) provides:

"If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data."

Section 7604(a) is virtually identical to § 7402(b) except that the word "records" appears in § 7604(a).

peal should not be dismissed as moot. After briefing on the mootness issue, the court dismissed the appeal. It explained:

> "Because it is undisputed that the tapes have been turned over to the IRS in compliance with the summons enforcement order, no controversy exists presently and this appeal is moot." *United States* v. *Zolin,* No. 91–55506 (CA9, Sept. 10, 1991).

We granted the Church's petition for certiorari to consider the narrow question whether the appeal was properly dismissed as moot. 503 U. S. 905 (1992).

## I

It has long been settled that a federal court has no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Mills* v. *Green,* 159 U. S. 651, 653 (1895). See also *Preiser* v. *Newkirk,* 422 U. S. 395, 401 (1975); *North Carolina* v. *Rice,* 404 U. S. 244, 246 (1971). For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant "any effectual relief whatever" to a prevailing party, the appeal must be dismissed. *Mills,* 159 U. S., at 653. In this case, after the Church took its appeal from the April 15 order, in compliance with that order copies of the tapes were delivered to the IRS. The Government contends that it was thereafter impossible for the Court of Appeals to grant the Church any effectual relief. We disagree.

While a court may not be able to return the parties to the *status quo ante*—there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes—a court can fashion *some* form of meaningful relief in circumstances such as

these. Taxpayers have an obvious possessory interest in their records. When the Government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records. Moreover, even if the Government retains only copies of the disputed materials, a taxpayer still suffers injury by the Government's continued possession of those materials, namely, the affront to the taxpayer's privacy. A person's interest in maintaining the privacy of his "papers and effects" is of sufficient importance to merit constitutional protection.[5] Indeed, that the Church considers the information contained on the disputed tapes important is demonstrated by the long, contentious history of this litigation. Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot.[6]

_____

[5] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[6] Petitioner also argues that a court can effectuate further relief by ordering the IRS to refrain from any future use of the information that it has derived from the tapes. Such an order would obviously go further towards returning the parties to the *status quo ante* than merely requiring the IRS to return the tapes and all copies thereof. However, as there is no guarantee that the IRS will in fact use the information gleaned from the tapes, it could be argued that such an order would be an impermissible advisory opinion. Cf. *G. M. Leasing Corp.* v. *United States*, 429 U. S. 338, 359 (1977) (suppression of fruits of illegal IRS search "premature" as issue can be considered "if and when proceedings arise in which the Government seeks to use the documents or information obtained from them"). But

The Government argues, however, that these basic principles are inapplicable in IRS summons enforcement proceedings because of the particular nature of the statute governing such proceedings. Reasoning from the premise that federal courts are empowered to consider only those matters within their jurisdiction, the Government argues that in IRS summons enforcement proceedings the subject-matter jurisdiction of the district court is limited to determining only whether the court should "compel . . . production of" the information requested by the summons. 26 U. S. C. §§ 7402(b), 7604(a). See n. 4, *supra*. Once the court has answered that question and compliance has occurred, there is nothing more for the district court to decide and the jurisdiction of the district court evaporates.

We think the Government misconceives the inquiry in this case. The Government may or may not be right that under §§ 7402(b) and 7604(a) the jurisdiction of the *district court* is limited to those matters directly related to whether or not the summons should be enforced. Indeed, the scope of the district court's jurisdiction under those provisions was the issue over which this Court deadlocked in *United States* v. *Zolin*, 491 U. S. 554 (1989).[7] The question presented in the

---

see *FTC* v. *Gibson Products of San Antonio, Inc.*, 569 F. 2d 900, 903 (CA5 1978) (court can effectuate relief, despite compliance with FTC subpoena, by requiring FTC to return subpoenaed documents and forbidding FTC to use materials in adjudicatory hearing). Because we are concerned only with the question whether *any* relief can be ordered, we leave the "future use" question for another day. For now, we need only hold that this case is not moot because a court has power to order the IRS to return or destroy any copies of the tapes that it may have in its possession.

[7] In *Zolin*, the District Court enforced the IRS summons, but placed restrictions on the IRS' ability to disclose the summoned materials to any other government agency. The Ninth Circuit affirmed, *United States* v. *Zolin*, 809 F. 2d 1411, 1416–1417 (1987), and we granted certiorari in part to consider whether the District Court, in conditioning its enforcement of the IRS summons, exceeded its jurisdiction under §§ 7402(b) and 7604(a). *Zolin*, 491 U. S., at 556. We were evenly divided on that question and therefore affirmed the Ninth Circuit. *Id.*, at 561. The issue still divides

current incarnation of this case is whether there was jurisdiction in the *appellate court* to review the allegedly unlawful summons enforcement order. On that question, the Government's elaborate statutory argument is largely irrelevant. There is nothing in the statute to suggest that Congress sought to preclude appellate review of district court enforcement orders. To the contrary, we have expressly held that IRS summons enforcement orders *are* subject to appellate review. See *Reisman* v. *Caplin,* 375 U. S. 440, 449 (1964). Thus, whether or not there is jurisdiction in the appellate court to review the District Court's order turns not on the subject matter of Congress' jurisdictional grant to the district courts, but on traditional principles of justiciability, namely, whether an intervening event has rendered the controversy moot. And, as we have already explained, this case is not moot because if the summons were improperly issued or enforced a court could order that the IRS' copies of the tapes be either returned or destroyed.

## II

We recognize that several Courts of Appeals have accepted the Government's argument in IRS enforcement proceedings,[8] but the force of that line of authority is matched

the lower courts. Compare *United States* v. *Zolin,* 809 F. 2d, at 1416–1417, and *United States* v. *Author Services, Inc.,* 804 F. 2d 1520, 1525–1526 (CA9 1986) (district court has "considerable" discretion to set terms of enforcement order), opinion amended, 811 F. 2d 1264 (1987), with *United States* v. *Barrett,* 837 F. 2d 1341 (CA5 1988) (en banc) (district court lacks authority to "conditionally enforce" IRS summons; inquiry limited to single question of whether summons should be enforced), cert. denied, 492 U. S. 926 (1989).

[8] *United States* v. *Kersting,* 891 F. 2d 1407, 1410, n. 8 (CA9 1989), cert. denied, 498 U. S. 812 (1990); *Hintze* v. *IRS,* 879 F. 2d 121, 124–125 (CA4 1989); *United States* v. *Church of World Peace,* 878 F. 2d 1281 (CA10 1989); *United States* v. *Sherlock,* 756 F. 2d 1145, 1146–1147 (CA5 1985); *United States* v. *First Family Mortgage Corp.,* 739 F. 2d 1275, 1278–1279 (CA7 1984); *United States* v. *Kis,* 658 F. 2d 526, 533 (CA7 1981), cert. denied, 455 U. S. 1018 (1982); *United States* v. *Equity Farmers Elevator,* 652 F. 2d 752

by a similar array of decisions reaching a contrary conclusion in proceedings enforcing Federal Trade Commission (FTC) discovery requests.[9] There is no significant difference between the governing statutes that can explain the divergent interpretations.[10] Nor is there any reason to conclude that

(CA8 1981); *United States* v. *Silva & Silva Accountancy Corp.*, 641 F. 2d 710, 711 (CA9 1981); *United States* v. *Deak-Perera Int'l Banking Corp.*, 610 F. 2d 89 (CA2 1979); *Kurshan* v. *Riley*, 484 F. 2d 952 (CA4 1973); *United States* v. *Lyons*, 442 F. 2d 1144, 1145 (CA1 1971). But see *Gluck* v. *United States*, 771 F. 2d 750 (CA3 1985).

[9] See *FTC* v. *Gibson Products of San Antonio, Inc.*, 569 F. 2d, at 903 (compliance with district court order enforcing FTC subpoena does not moot appeal; court can effectuate relief by requiring FTC to return subpoenaed documents and forbidding FTC from using materials in adjudicatory hearing); *FTC* v. *Ernstthal*, 197 U. S. App. D. C. 174, 175, 607 F. 2d 488, 489 (1979) (compliance with FTC subpoena does not moot appeal where court can order FTC to return subpoenaed documents); *Atlantic Richfield Co.* v. *FTC*, 546 F. 2d 646, 650 (CA5 1977) (same); *FTC* v. *Browning*, 140 U. S. App. D. C. 292, 293–294, n. 1, 435 F. 2d 96, 97–98, n. 1 (1970) (same). Cf. *FTC* v. *Invention Submission Corp.*, 296 U. S. App. D. C. 124, 127, n. 1, 965 F. 2d 1086, 1089, n. 1 (1992) (compliance with district court order enforcing FTC civil investigative demand pursuant to 15 U. S. C. § 57b–1(e) does not moot appeal as court could order FTC "to return responsive materials and to destroy any records derived from them"); *Casey* v. *FTC*, 578 F. 2d 793 (CA9 1978) (action seeking to enjoin FTC investigation presents live controversy despite parties' compliance with FTC subpoena as appellate court can order FTC to return wrongfully subpoenaed records). See also *Government of Territory of Guam* v. *Sea-Land Service, Inc.*, 294 U. S. App. D. C. 292, 295, 958 F. 2d 1150, 1153 (1992) (compliance with district court order enforcing Federal Maritime Commission discovery order does not moot appeal where party seeks return of discovered materials).

There is no merit to the Government's contention that the FTC cases are distinguishable in that they involve adjudicative, as opposed to investigative, subpoenas. While *Gibson Products* involved an adjudicative subpoena, *Invention Submission, Casey,* and *Atlantic Richfield* all involved investigative subpoenas.

[10] In fact, the summons enforcement provisions of the Internal Revenue Code "closely paralle[l]" the corresponding provisions of the Federal Trade Commission Act. See Handler, Recent Antitrust Developments—

production of records relevant to a tax investigation should have mootness consequences that production of other business records does not have. Moreover, in construing these provisions of the Internal Revenue Code, the Court has considered it appropriate to rely on its earlier cases involving other statutes, including the Federal Trade Commission Act. See *United States* v. *Powell,* 379 U. S. 48, 57 (1964) (citing *United States* v. *Morton Salt Co.,* 338 U. S. 632, 642–643 (1950)).

We therefore conclude that the appeal was improperly dismissed as moot. In so concluding we express no opinion on the merits of the Church's argument that the Government did not establish an adequate evidentiary basis to support the District Court's determination that the tapes fell within the crime-fraud exception to the attorney-client privilege. Nor do we express any opinion about the res judicata contention advanced in the Government's brief in opposition to the petition for certiorari. Brief for United States in Opposition

---

1964, 63 Mich. L. Rev. 59, 90 (1964). Section 9 of the FTC Act provides, in pertinent part:

"Any of the district courts of the United States . . . may, in case of contumacy or refusal to obey a subpoena issued to any person, partnership, or corporation issue an order requiring such person, partnership, or corporation . . . to produce documentary evidence if so ordered . . . ." 38 Stat. 722, as amended, 15 U. S. C. § 49.

In the words of Professor Handler:

"Section 7602 of the Internal Revenue Code authorizes the Secretary of the Treasury or his delegate to summon taxpayers or other witnesses to testify and to produce relevant and material documents. Section 9 of the FTC Act grants the same power to the Commission. Should a recipient of a summons or subpoena refuse to comply, both statutes afford the same enforcement procedures. In neither case is the administrative subpoena self-executing: obedience can be obtained only by court order. In addition, both statutes, which are in *pari materia,* make it a criminal offense to 'neglect' to appear or to produce subpoenaed documents." 63 Mich. L. Rev., at 91 (footnotes omitted).

13–14. We simply hold that compliance with the summons enforcement order did not moot the Church's appeal.[11]

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[11] In reaching this conclusion, we reject petitioner's "fall back" argument that even if compliance with a summons enforcement order by the subject of the IRS investigation moots an appeal, compliance by a disinterested third party—here, the Clerk of the Los Angeles Superior Court—does not. Brief for Petitioner 25–34; Reply Brief for Petitioner 16–18. We agree with the Government that a "difference in the method of compliance does not create a distinction for the purpose of the constitutional case or controversy requirement." Brief for United States 30. This case presents a justiciable controversy not because a third party complied with the summons enforcement order, but because petitioner has a stake in the outcome of the proceeding and a federal court can effectuate relief should petitioner prevail on the merits.

There is a distinction in the law between the enforcement of discovery orders directed at parties and the enforcement of discovery orders directed at disinterested third parties, but that distinction derives from concerns regarding finality, not mootness. As a general rule, a district court's order enforcing a discovery request is not a "final order" subject to appellate review. A party that seeks to present an objection to a discovery order immediately to a court of appeals must refuse compliance, be held in contempt, and then appeal the contempt order. See *United States* v. *Ryan,* 402 U. S. 530 (1971). However, under the so-called *Perlman* doctrine, see *Perlman* v. *United States,* 247 U. S. 7 (1918), a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance. *Ibid.* See generally 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3914.23, pp. 156–167 (2d ed. 1992). This distinction has no bearing on this case because a district court order enforcing an IRS summons is an appealable final order. See *Reisman* v. *Caplin,* 375 U. S. 440 (1964). There is no "third-party exception" because there is no general rule barring immediate appeal of IRS summons enforcement orders.