# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1779

IN THE MATTER OF:

RESOURCE TECHNOLOGY CORPORATION
(BY GREGG E. SZILAGYI, TRUSTEE),

*Debtor-Appellee.*

APPEAL OF:

LEON GREENBLATT; BANCO PANAMERICANO, INC.;
AND CHIPLEASE, INC.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 1508—**Matthew F. Kennelly**, *Judge.*

ARGUED NOVEMBER 7, 2005—DECIDED DECEMBER 9, 2005

Before POSNER, EASTERBROOK, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Resource Technology Corporation turns garbage into money by collecting methane from landfills, reducing the emission of a greenhouse gas in the process. It either sells the methane or burns the gas to make electricity. Installing methane-collection systems is tricky, however, and Resource Technology landed in bankruptcy because its outlays exceed its revenues from harvested methane. This appeal concerns one of its money-losing ventures.

In 1996 Resource Technology agreed with Chastang Landfill, Inc., in Mount Vernon, Alabama, to build a gas-collection system. Consortium Service Management Group contracted to buy the scavenged gas, which it planned to purify and resell to a local utility. By 1999 the collection system had not been completed, and Chastang terminated the contract. Litigation ensued and was settled: Resource Technology promised to finish the system by September 2002 and gave Chastang a promissory note to cover costs it had incurred. When that deadline passed with the system still not operable, Chastang again terminated the agreement and Resource Technology, by then in bankruptcy, filed an adversary proceeding. A second settlement was reached and a final deadline for completion set: March 31, 2003. That deadline, too, passed with the system unfinished, and another adversary proceeding followed. A third settlement was reached, this time with the Trustee in bankruptcy. Chastang and Consortium Service Management agreed to release Resource Technology from its obligation to finish the system, to forgive the promissory note, to abandon any claim to damages, and to pay $75,000; in exchange the Trustee agreed to give up Resource Technology's right to the methane.

Before the bankruptcy court approved this settlement, Resource Technology's principal creditors (holding about $40 million in debt claims, secured by a floating lien on the firm's assets) made the Trustee a better offer. In exchange for a right to complete the system and collect the methane, the lenders offered to pay the estate $200,000 and release $2 million of their debt claims; they promised to indemnify the estate for any sums it should be required to pay on account of delay in completing the system. The Trustee preferred this offer to Chastang's but could not see how to implement the proposal, for the contract between Resource Technology and Chastang has an anti-assignment

clause, and at all events had been terminated because of Resource Technology's enduring delinquency.

The lenders proposed that the right to collect the gas could be transferred to them if the Trustee were to abandon the executory portion of the contract between Resource Technology and Chastang. The lenders then could use their security interest to step into Resource Technology's position. Bankruptcy Judge Wedoff concluded, however, that an executory contract cannot be abandoned under 11 U.S.C. §554; the debtor's choices are limited to assumption or rejection under 11 U.S.C. §365—and, once a contract has been assumed (as this one was), to performance or breach. Abandonment would just break the debtor's promise and support a claim for damages; it could not transfer Resource Technology's rights to the lenders. Judge Wedoff therefore approved the settlement with Chastang, and District Judge Kennelly affirmed. 2005 U.S. Dist. LEXIS 4101 (N.D. Ill. March 18, 2005).

The lenders' appeal has been met at the outset with a contention that the litigation is moot. All requests for a stay were denied, and the settlement between Chastang and the Trustee has been consummated. The $75,000 has been paid; Chastang's claims have been released; someone else has taken over completion of the system and the collection of gas. Yet why should this end the controversy? A case is moot when no further judicial relief is possible. See *Church of Scientology v. United States*, 506 U.S. 9 (1992). By that standard, this dispute is live. A court could order the Trustee to return Chastang's money, reinstate its claims for damages and payment on the note, and direct Chastang to deliver the gas to the lenders. Unscrambling a transaction may be difficult, but it can be done. No one (to our knowledge) thinks that an antitrust or corporate-law challenge to a merger becomes moot as soon as the deal is consummated. Courts can and do order divestiture or damages in such

situations. Perhaps Chastang has in mind not mootness but judicial reluctance to upset legitimate reliance interests. See 11 U.S.C. §363(m); *In re UNR Industries, Inc.*, 20 F.3d 766 (7th Cir. 1994). Appellees do not contend, however, that anyone who has relied on the settlement would be left in the lurch; the lenders could be ordered to compensate the firm that completed the system and collects the gas. So we must resolve the merits.

The lenders want us to decide whether §365 (which addresses the assumption or rejection of executory contracts) supersedes §554 (which authorizes debtors to abandon assets). They contend that these sections of the Bankruptcy Code may be reconciled. Maybe so, see *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544 (7th Cir. 2003), but that's not the real issue. Suppose that §554 were the only part of the Code with any relevance. Still, the creditors would face two problems: first, a debtor may abandon assets but not contractual duties; second, abandonment would end the business deal rather than pass any rights through to the lenders.

Section 554(a) provides: "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The phrase "property of the estate" is not defined in the Code; courts look to state law to determine what kind of "property" an estate possesses. See *Butner v. United States*, 440 U.S. 48 (1979). The normal use of §554 is to give up an interest in real estate that is burdened by a debt so large that the equity value is negligible or negative. That is not its sole use, however. A contract right—say, a right to purchase a parcel of land—usefully may be understood as "property" for this purpose. States generally deem options and equivalent entitlements to be varieties of property. But does either Illinois or Alabama (the two states involved in the contract between Resource

Technology and Chastang) treat a duty of performance under a contract as a property right?

Normally a duty is the opposite of a right. And that's the lenders' main problem. Resource Technology had a duty to complete the gas-collection system; it had a right to collect the gas only after fulfilling that duty. When the lenders asked the Trustee to "abandon" the contract, Resource Technology had not finished the collection system. Abandonment then would have been nothing but breach; and if Resource Technology repudiated its promise (already broken by delay), it would have lost any right to the gas. There was no property interest the Trustee could abandon.

If one were to treat a package of rights and duties as a single property interest, in the way a contract as a whole might be sold (in the absence of an anti-assignment clause), how would abandonment of that package give the lenders any entitlement to the gas? A right that is abandoned is gone. Once Resource Technology's right to harvest gas disappears, the entitlement reverts to the landfill's owner—Chastang. The lenders seem to think that their security interest would direct the gas to them, free from the anti-assignment clause, but their security is in the contract rather than in the gas. If the contract is abandoned, the security disappears. A contract right in this respect differs from real estate or chattels, which continue to exist even if a given party's stake is abandoned. When a contract terminates, the asset covered by the floating lien vanishes in a puff of smoke. So the bankruptcy judge was right to hold that the lenders' proposal is legally impossible.

Finally we must consider §363(f)(3), which says that a trustee cannot dispose of a secured party's collateral over objection unless the price realized exceeds the value of the lien. Appellants maintain that this provision forbids the settlement between the Trustee and Chastang. Yet why

should we treat the settlement as the disposition of collateral? Section 363(f)(3) deals with liens on specific assets. A floating lien does not attach to particular assets; a borrower remains free to transact in the course of its business, and if it sells gas—or settles a lawsuit—the proceeds become subject to the lien. Out of bankruptcy Resource Technology and Chastang could have settled their dispute without any hindrance from the lenders; a Trustee has the same power in bankruptcy. Creditors that hold floating liens are protected by the requirement that the Trustee's decisions be beneficial to the estate. Judge Wedoff concluded, after a hearing, that this settlement is beneficial. This means that the lenders are better off than they would be if Resource Technology, having failed to complete the system, were exposed to liability on the note and damages for breach, while losing the right to harvest and sell the gas. Section 363(f)(3) does not block transactions that make creditors better off. These lenders are not as well off as they would be if they could harvest the methane, but as we have explained that is not an available option.

AFFIRMED

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—12-9-05