# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 8, 2009     Decided October 23, 2009

No. 08-5205

FEDERAL TRADE COMMISSION,
APPELLEE

v.

SCOTT TARRIFF, ET AL.,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-mc-00217)

*Eric Grannon* argued the cause for appellants. With him on the briefs was *J. Mark Gidley. Christopher M. Curran* entered an appearance.

*Lawrence DeMille-Wagman*, Assistant General Counsel, Federal Trade Commission, argued the cause for appellee. With him on the briefs were *Willard K. Tom*, General Counsel, and *John F. Daly*, Deputy General Counsel.

Before SENTELLE, *Chief Judge*; TATEL, *Circuit Judge*; and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Scott Tarriff and others (collectively "appellants") appeal from an order of the district court granting a petition to enforce subpoenas *ad testificandum* issued to pharmaceutical company officers in the course of an ongoing Federal Trade Commission law enforcement investigation into agreements among companies suspected of unlawfully delaying entry of lower cost generic versions of a drug. Appellants' sole basis for asserting the invalidity of the subpoenas is that the FTC proposed to record the testimony, not only by the stenographic method mandated in the Commission's rules, but also by videotape. Finding this objection to be utterly without merit, the district court granted the petition for enforcement of the subpoenas. We agree and affirm.

\*   \*   \*

In an ongoing investigation, the Commission seeks to determine whether agreements among Unimed Pharmaceuticals, Inc., Laboratories Besins Iscovesco, and Solvay Pharmaceuticals, Inc., or any other agreements, unlawfully delayed entry of a lower cost generic version of a drug called AndroGel in violation of section 5 of the FTC Act, 15 U.S.C. § 45. *See FTC v. Tarriff*, 557 F. Supp. 2d 92, 93 (D.D.C. 2008). The FTC issued subpoenas *ad testificandum* for corporate officials, including appellants herein. The Commission's rules of practice governing investigative hearings provide for stenographic recording, and the first round of subpoenas referenced stenographic recording of the testimony adduced under the subpoenas. Thereafter, the Commission on February 13, 2008, issued the amended subpoenas before us in the current litigation, which provided for sound and visual recording in addition to stenographic recording of the testimony. Appellants objected on the basis that the rules of the FTC do not provide for recording by other than stenographic means. The Commission rejected the objection. Some of the subpoenaed

witnesses notified the Commission of their intention not to comply with the subpoenas. The Commission brought the instant action for enforcement in the district court. The district court granted the petition and ordered the subpoenas enforced. Appellants filed the appeal now before us.[1]

Appellants' objection to the subpoenas relies solely on the proposition that the rule of the Commission, by mandating that "[investigational] hearings shall be stenographically reported and a transcript thereof shall be made a part of the record of the investigation," 16 C.F.R. § 2.8(b), somehow precludes the possibility that the Commission could record the proceedings by other methods as well. Lest we be misunderstood, the Commission does not propose to use video methods of transcription instead of stenographic transcription, but only in addition thereto. Nor do appellants argue that the taking of the videographic transcription is in any fashion inconsistent with, or the cause of any interference with, stenographic transcription mandated by the rule. Instead, respondents rest solely on the novel proposition that somehow the use of the word "shall" in the rule not only requires that the stenographic transcription be prepared, but also precludes the Commission from doing anything else in the way of transcription.

---

[1]Although the depositions contemplated by the subpoenas have now been completed, we agree with the parties that the controversy is saved from mootness by the prayer of appellants that we order the Commission to destroy the videotapes of the proceedings. *See Church of Scientology of California v. United States*, 506 U.S. 9 (1992) (compliance with summons for production of audiotapes did not moot church's appeal because court has power to order government to return or destroy tapes); *Office of Thrift Supervision v. Dobbs*, 931 F.2d 956, 958 (D.C. Cir. 1991) (finding that compliance with summons mooted appeal, but stating that the "case would present a different issue were Dobbs requesting the government to return documents he had provided, rather than merely to seal his testimony").

Like the district court, we are unconvinced "that the word 'shall' expresses not only a mandatory direction, but also a limiting principle." *FTC v. Tarriff*, 557 F. Supp. 2d at 94. It is fixed law that words of statutes or regulations must be given their "ordinary, contemporary, common meaning." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (citations omitted). It is also fixed usage that "shall" means something on the order of "must" or "will." *See, e.g.*, Black's Law Dictionary 1407 (8th ed. 2004) (defining "shall" as "has a duty to; more broadly, is required to"). We know of no usage, nor do appellants bring forward any, that suggests that the use of "shall" mandating one act implies a corresponding "shall not" forbidding other acts not inconsistent with the mandated performance. Borrowing from the Commission's litigation documents, the district court noted an illustrative example of "shall" in common parlance: A direction to a teenage son that he "shall" clean his room does not thereby forbid him from taking out the trash, walking the dog, or going to school. Appellants are without contra example.

Appellants offer as authority for their novel proposition the Supreme Court decision in *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007), which they assert "held that a provision's use of 'shall' as a directive 'does not just set forth *minimum* requirements . . . . The provision operates as a ceiling as well as a floor.'" (Emphasis in original.) It is indeed true that the high court used the language appellants quote to us, 551 U.S. at 663, but not in a context remotely supporting appellants' construction of the Commission's rule. In *National Association of Home Builders*, the Supreme Court was construing § 402(b) of the Federal Water Pollution Control Act, 33 U.S.C. § 1342(b), which mandates that the Environmental Protection Agency (EPA) "shall approve" transfer of certain permitting authority to a state upon a showing that the state has met nine specified criteria. In attempting to reconcile that statute with § 7(a)(2) of the Endangered Species

Act, the Ninth Circuit held that the EPA must also require the completion of another criterion before transferring the permitting authority. *See Defenders of Wildlife v. USEPA*, 420 F.3d 946 (9th Cir. 2005). It was in the context of reversing the Ninth Circuit's imposition of an additional criterion into the triggering mechanism for the mandatory performance of a duty created by the word "shall" in the statute that the Supreme Court described the statutory mandate as "operating as a ceiling as well as a floor." 551 U.S. at 646. Contrary to appellants' argument, the Supreme Court's use of "ceiling" and "floor" had nothing to do with the possibility that the agency, in carrying out the statutory mandate, might do some other act, as well as that mandated by the statute. The floor and ceiling referred to by the Supreme Court had to do with the triggering mechanism of the mandate, not the carrying out of the mandate once triggered. In other words, once the nine statutory criteria were accomplished, the floor of necessity was met, and neither the agency nor the Ninth Circuit could erect a higher ceiling that would prevent the mandate from operating. Nonetheless, so far as we know, the EPA could do other things while transferring the permitting authority. It could, for example, send a nice congratulatory note to the state receiving the authority, thank the governor for the state's efforts, or create a videographic transcription of its meetings. Appellants' argument, that the Supreme Court's decision is somehow authority for the proposition that the term "shall" is a mandate not only to do one thing but to cease and refrain from doing all others, borders on sophistry.

Appellants also rely on *Beverly Health and Rehabilitation Services, Inc. v. NLRB*, 317 F.3d 316 (D.C. Cir. 2003), which, if anything, has less to do with the current controversy than *National Association of Home Builders*. In that case, this court reversed the decision of the NLRB approving the unilateral extension of a strike deadline notice by a union. The statute mandated that a strike notice state "the date and time that such

action will commence" and allowed that a "notice, once given, may be extended by the written agreement of both parties." 29 U.S.C. § 158(g). Unsurprisingly, we held that this language precluded the NLRB's approval of the unilateral extension by the union. Unconvincingly, appellants assert that this is authority for the proposition that unambiguously mandatory language precludes additional conduct even absent the use of the term "only." The lack of parallel between *Beverly Health* and the present controversy is too apparent to require much explanation. The construction offered by the NLRB in *Beverly Health* would have rendered the operative sentence surplusage. If either party could unilaterally extend the deadline, it would have made no sense for Congress to have specified that the two of them acting together could do it in writing. It was apparent in that case that Congress had provided one and only one means for extension. Nothing approaching that exists in the matter before us. It is perfectly possible—indeed, it has already been done—for the Commission to transcribe the testimony by videography without interfering with the stenographic reporting mandated by the rule. Nothing is rendered surplusage. The mandate of the rule is not defeated.

The closest appellants come to authority supporting their proposition is a 1968 district court decision, *U.S. Steel Corp. v. United States*, 43 F.R.D. 447 (S.D.N.Y. 1968). In that case, a judge construed the language of the 1967 version of Federal Rule of Civil Procedure 30(c), which read: "The testimony shall be taken stenographically and transcribed unless the parties agree otherwise." The district judge in *U.S. Steel Corp.* held that this precluded the use of tape recording. We note that the "unless the parties agree otherwise" language renders that rule distinguishable from Commission Rule 2.8. In any event, not only is that district court decision binding on no court, but the logic of that decision has been criticized on precisely the same basis the district court adopted and this court now adopts in

rejecting appellants' argument. *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2115 (2d ed. 2008) (explaining that "[i]t is difficult to see the basis for the [*U.S. Steel Corp.*] decision, since as long as the examination was to be recorded stenographically in the usual manner as well as electronically the provisions of the rule were complied with").

In a last desperate effort to escape defeat, appellants argued at oral argument that even if we accept the Commission's interpretation of Rule 2.8, we should nonetheless remand the matter for further consideration by the Commission. The rationale for this late-offered argument lies in the standard of review of an agency's interpretation of its own regulations. Appellants concede that "an agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (internal quotations omitted). Obviously, we are prepared to affirm the district court's enforcement of the subpoenas based on the agency's interpretation that the rule permitted it to conduct videographic as well as stenographic recording of the proceedings. However, appellants contend that this standard of review applies to agency resolution of ambiguous regulation, but should not support affirmance of an interpretation based on an agency's erroneous belief that a regulation was unambiguous. Concededly, the doctrine of *Cajun Electric Power Coop., Inc. v. FERC*, 924 F.2d 1132 (D.C. Cir. 1991), supports that reasoning. However, *Cajun Electric* does not govern in the present case.

It is true that both appellants and the Commission argue for unambiguous interpretations of the rule in their own favor. However, this in no way mandates remand. Appellants' foundation for their argument that the Commission erroneously believed the rule unambiguous is a statement in the

Commission's litigation documents that "[m]oreover, even if there were any ambiguity in Rule 2.8(b), which there is not, that ambiguity should be resolved in favor of the Commission's interpretation, which is set forth in its decision denying respondents' Petition to Quash." Reply in Further Support of Petition of the Federal Trade Commission for an Order Enforcing Subpoenas Ad Testificandum, *FTC v. Tarriff*, Misc. No. 08-MC-217 at *12. As this is the only record support offered by appellants for the late-stated contention, presumably it is the best that exists. In the language of the reply, the Commission covers both bases. That is, it proposes that its interpretation is the only one for an unambiguous rule, but to the extent the rule has any ambiguity, it is still the Commission's reasonable interpretation. We need not remand for the Commission to redo what it has already done.

### Conclusion

In short, we find the position of appellants to be completely without merit and affirm the decision of the district court.