CITY OF COLTON, Plaintiff,

v.

AMERICAN PROMOTIONAL EVENTS, INC., et al., Defendants.

And Related Consolidated Actions.

Nos. EDCV 09–01864 PSG (SSx), CV 09–06630 PSG (SSx), CV 09–06632 PSG (SSx), CV 09–07501 PSG (SSx), CV 09–07508 PSG (SSx), and CV 10–00824 PSG (SSx).

United States District Court, C.D. California.

Oct. 13, 2011.

Carissa Beecham, Gene Tanaka, John H. Holloway, Best Best & Krieger LLP, Walnut Creek, CA, Danielle Gerber Sakai, Best Best & Krieger, Riverside, CA, Amy Rodes, Best Best & Krieger LLP, Los Angeles, CA, for Plaintiff.

Daniel J. Coyle, Steven H. Goldberg, Jennifer Hartman King, Leslie Fredrickson, Downey Brand LLP, Sacramento, CA, Brian L. Zagon, Philip C. Hunsucker, Marc A. Shapp, Maureen S. Bayer, Hunsucker Goodstein and Nelson PC, Lafayette, CA, Erik S. Mroz, Leah B. Silverthorn, Hunsucker Goodstein and Nelson PC, Indianapolis, IN, David C. Solinger, Hunsucker Goodstein & Nelson PC, Francis Norman Scollan, Emily L. Murray, Michael R. Farrell, Allen Matkins Leck Gamble & Mallory LLP, Martin N. Refkin, Thomas Alan Bloomfield, Timothy P. Gallagher, Elizabeth Paranhos, Emil A. Macasinag, Jill H. Van Noord, Megan Sara Meadows, Gallagher & Gallagher, Elizabeth McClure Burnside, Jeffrey David Dintzer, Patrick Ward Dennis, Matthew C. Wickersham, Gibson Dunn and Crutcher LLP, Christopher T. Johnson, John Anthony Lawrence, Matthew Clark Bures, Richard Alan Dongell, Dongell Lawrence Finney, Allan Edward Ceran, Burke Williams & Sorensen LLP, William W. Funderburk, Jr., Anna Louise Cole, Castellon & Funderburk LLP, Mark Erik Elliott, Pillsbury Winthrop Shaw Pittman LLP, Dennis S. Ellis, Nicholas James Begakis, Tracy J. Egoscue, Paul Hastings Janofsky & Walker LLP, Jad T. Davis, Bradley P. Boyer, Ropers Majeski Rohn & Bentley, Beth Marie Weinstein, C. Robert Boldt, Steven Edward Soule, Kirkland and Ellis LLP, David S. Poole, Poole and Shaffery LLP, Los Angeles, CA, Amanda A. Neidert, Joseph L. Beavers, Joseph W. Hovermill, Robert David Wyatt, Miles & Stockbridge PC, Baltimore, MD, Henry Lerner, James L. Meeder, Allen Matkins Leck Gamble Mallory and Natsis LLP, Rochelle L. Russell, US Department of Justice, Andrew D. Lanphere, Martin R. Sul, Scott A. Sommer, Pillsbury Winthrop Shaw Pittman LLP, Peter H. Weiner, Paul Hastings LLP, Donald E. Sobelman, Stephen C. Lewis, Thomas J. Boer, Estie M. Kus, Barg Coffin Lewis and Trapp LLP, San Francisco, CA, Penelope Alexander–Kelley, Jean–Rene Basle, Office of the County Counsel, County of San Bernardino, Ruth E. Stringer, San Bernardino County Counsel Office, San Bernardino, CA, Nathan Aaron Perea, Brendan W. Brandt, Keith Alan Kelly, Varner & Brandt LLP, Amy E. Hoyt, Burke Williams & Sorensen LLP, Thomas N. Jacobson, Attorney at Law, Riverside, CA, Daniel S. Kippen, John E. Van Vlear, Voss Cook and Thel, Newport Beach, CA, Christine A. Renshaw, Steven J. Renshaw, Renshaw and Associates APLC, Ventura, CA, Kim Noelle Smaczniak, Leslie Marie Hill, Michael C. Augustini, US Department of Justice, Washington, DC, Sallie Lux, Brouse McDowell, Akron, OH, Christopher S. Riley, Barnes & Thornburg, Elkhart, IN, Brian E. Koegle, Poole and Shaffery LLP, Valencia, CA, David R. Isola, Isola Law Group LLP, Lodi, CA, for Defendants.

## MEMORANDUM AND ORDER DENYING PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR REVIEW OF SPECIAL MASTER'S AUGUST 1, 2011 REPORT RE ESI PRODUCTION

### (Dkt. No. 924)

SUZANNE H. SEGAL, United States Magistrate Judge.

### I.

### INTRODUCTION

On August 1, 2011, the Honorable Venetta S. Tassopoulos (Ret.), in accordance with her designation as the Special Master in the above-captioned matter (*see* Dkt. No. 278), issued a Report resolving certain discovery disputes (the "Report"). (*See* Report of Special Master at Dkt. No. 877). These disputes involved Plaintiff United States of America (the "United States" or "Plaintiff") and Defendants Goodrich Corporation ("Goodrich") and Pyro Spectaculars, Inc. ("PSI") (collectively, "Defendants") and concerned the United States' production of electronically

stored information ("ESI") in response to the First Request for Production of Documents propounded by Defendants (the "Production Requests").

On August 18, 2011, the United States filed Objections to and Motion for Review *De Novo* of Special Master's Report and Order to Compel (the "Motion"). (Dkt. No. 924). On August 31, 2011, Defendant Goodrich filed an Opposition to the Motion (the "Opposition" or "Opp."). (Dkt. No. 956). The United States filed a Reply in further support of the Motion on September 6, 2011 (the "Reply"). (Dkt. No. 963). On October 4, 2011, the Court held a hearing on the Motion.

As discussed in further detail below, the United States seeks an order vacating the Special Master's August 1 Report and Order and denying Defendant Goodrich's underlying Motion to Compel in Accordance with the Federal Rules of Civil Procedure (the "Motion to Compel" or "MTC"). (*See* Dkt. No. 804). As set forth in this Court's prior order appointing the Special Master, all rulings by the Special Master (whether findings of fact or legal conclusions) shall be reviewed *de novo* by the Magistrate Judge. *See* Fed. R.Civ.P. 53(g)(3) (providing for *de novo* review); *see also* Order dated March 5, 2010 ("All rulings by the Special Master (whether findings of fact or legal conclusions) shall be reviewed *de novo* by the Magistrate Judge."). (Dkt. No. 278). Any objections to the Magistrate Judge's review of the Special Master's ruling shall be made pursuant to the normally applicable rules. *See* Fed.R.Civ.P. 72(a). For the reasons stated below, the United States' Motion for Review *De Novo* of the Special Master's August 1 Report and Order is DENIED. The Court VACATES its prior Order of September 19, 2011, which stayed the August 1, 2011 Report of Special Master.

## II.

### THE PARTIES' CONTENTIONS

In its underlying Motion to Compel, Goodrich contended that the United States failed to produce documents in accordance with the requirements of Rule 34(b) of the Federal Rules of Civil Procedure. (MTC at 1). Specifically, Goodrich argued that Rule 34(b)(2)(E)(i) required the United States either (1) to produce documents, including ESI, as they are kept in the usual course of business or (2) to organize and label the production to correspond to the Production Requests. (*Id.*). Goodrich sought an order requiring the United States to categorize each previously produced document by Production Request and to similarly label all future productions according to the categories in the Requests. (*Id.* at 2).

In its Motion before this Court, the United States contends that its production conformed to the requirements of Case Management Order No. 1 (the "CMO," Dkt. No. 601), which, among other things, required the parties to post their productions to a common repository maintained by Encore Legal Solutions ("Encore") in TIFF or JPEG format. (Motion at 1; *see also* CMO at 3). The United States argues that the agreement of the parties, as reflected in paragraph five of the CMO, supersedes the requirements set forth in Rule 34(b). (Motion at 2). The United States further argues that even if the CMO does not supersede the Federal Rules of Civil Procedure, Rule 34(b)(2)(E)(i)'s labeling requirement applies only to the production of "traditional" hard copy documents, not to ESI. (*Id.*) According to the United States, the production of ESI under the Federal Rules is governed solely by Rule 34(b)(2)(E)(ii), which specifies that ESI must be produced in the form in which it is ordinarily maintained or in another reasonably useable form. (*Id.*).

## III.

### THE SPECIAL MASTER'S ORDER

In the August 1 Report and Order, the Special Master concluded that the CMO does not exempt the parties from the requirements of Rule 34(b) and that Rule 34(b)(2)(E)(i), which governs the manner in which productions must be organized, applies to ESI as well as to traditional hard copy documents. (Report at 5–11). The Special Master noted that while the CMO reflects the parties' agreement regarding the format in which ESI was to be produced, it does not expressly exempt the parties from the re-

quirements of Rule 34(b). (*Id.* at 5). After a detailed analysis of the advisory committee notes and certain case law addressing Rule 34(b)(2)(E), the Special Master determined that subsections (i) and (ii) concern, respectively, the rules governing the organization and format of discovery productions and must be read conjunctively. (*Id.* at 6–11). The Special Master specifically found that the organizational requirements set forth in Rule 34(b)(2)(E)(i) apply to hard copy and ESI productions alike. (*Id.* at 8–9). The Special Master ordered the United States either to re-produce the ESI it had already produced as TIFFs or JPEGs in native format with metadata intact, or to categorize by Production Request the Bates numbers of all previously produced ESI. (*Id.* at 11). In addition, the Special Master ordered "all production of ESI in the future [to] be organized and labeled according to the categories in the request" unless the CMO is amended specifically to exempt the parties from the requirements of Rule 34(b)(2)(E) or the parties otherwise reach an agreement regarding the organization of ESI productions consistent with Rule 34. (*Id.* at 12).

## IV.

### DISCUSSION

#### A. *The Controversy Is Not Moot Because It Is Capable Of Repetition*

On August 12, 2011, pursuant to the Special Master's Order, the United States re-produced in native format the ESI it had previously produced. (Opp. at 1). Goodrich consequently maintains that the present Motion is moot as to any prior production and that the United States' request for an opinion applicable to future discovery does not present a case or controversy that is currently ripe for review. (*Id.*). While the Court construes Goodrich's mootness argument as a concession that the United States has satisfied its obligations under Rule 34(b)(2)(E)(i) with respect to its previous productions, the Court concludes that because the issues presented in the instant Motion are capable of repetition, yet evading review, they fall within an exception to the mootness doctrine and are properly before the Court.

Federal jurisdiction depends on the existence of a "case or controversy" under Article III of the Constitution. *Independent Living Ctr. of S. Cal., Inc. v. Maxwell–Jolly*, 590 F.3d 725, 727 (9th Cir.2009). "A claim that has lost its character as a live controversy is considered moot" and deprives the court of jurisdiction to hear it. *Id.; see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) ("It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions....") (internal quotation marks omitted). The existence of a live controversy depends on whether the court can grant effective relief. *Siskiyou Reg'l Educ. Project v. United States Forest Serv.*, 565 F.3d 545, 559 (9th Cir.2009). An exception to the mootness doctrine therefore applies when "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the [complaining party] will be subjected to it again." *Johnson v. Rancho Santiago Community College Dist.*, 623 F.3d 1011, 1019 (9th Cir.2010) (internal quotation marks omitted).

Here, the February 29, 2012 fact discovery deadline set forth in the CMO is fast approaching. (CMO at 7). To be useful as deposition exhibits, future productions must be completed and useable well before that deadline. The parties currently have several pending discovery motions, (*see, e.g.*, Dkt. Nos. 832, 929), and the likelihood of future disputes concerning the organization of ESI productions is great absent definitive resolution of the parties' obligations. Consequently, the Court concludes that the exception to the mootness doctrine for cases that are "capable of repetition, yet evading review" applies to the instant controversy. The Motion is therefore ripe for review. *Johnson*, 623 F.3d at 1018.

#### B. *The Court's Intent When It Issued the Case Management Order, Not The Parties' Intent, Governs The Parties' Production Obligations*

The United States contends that the CMO, which in part reflects the parties' agreement

concerning the production of ESI, memorializes the parties' intent "to modify the requirements for Rule 34 for ESI." (Reply at 9). According to the United States, the CMO distinguishes the requirements for producing "voluminous paper documents pursuant to the Federal Rules of Civil Procedure" from the separate requirements applying to ESI posted to the common document repository maintained by Encore. (*Id.* at 10; *see also* CMO at 3). The United States argues that the parties selected the metadata to be included in the ESI repository and knowingly rejected the vendor's suggestion that additional metadata fields, such as attachment range, document date, author, recipient, folder range and folder title, among others, be included in the required production format. (Motion at 9; *see also id.* Exhs. 17–18). According to the United States, the fact "[t]hat Goodrich and other parties have for seven years produced records exclusively through Encore, without labeling and without native file metadata, is the most conclusive evidence that the parties have always understood the CMO not to require production of ESI pursuant to Rule 34." (Reply at 10).

■ It is possible that the parties originally intended to exempt ESI productions from the requirements of Rule 34(b) when they drafted the original proposed CMO, although the Court is not entirely convinced that the parties truly considered this issue. However, the CMO is now a court order, signed by Judge Gutierrez, not a contract between private parties. Therefore, the parties' underlying intent is not controlling. Instead, the relevant question is whether the CMO, as currently written, reflects an intent by Judge Gutierrez to supersede the requirements of Rule 34. Absent specific language to that effect, this Court cannot find that Judge Gutierrez intended to deprive the parties of their right under the Federal Rules to a production organized in a satisfactory way. Consequently, the CMO complements but does not supersede the requirements of Rule 34(b)(2)(E)(i).

## C. The Requirement That Productions Be Rationally Organized As Set Forth In Rule 34(b)(2)(E)(i) Applies To ESI

Rule 34(b)(2)(E) provides:

> *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed.R.Civ.P. 34(b)(2)(E).

The United States contends that Rule 34(b)(2)(E) "distinguishes between documents and ESI by referring to them in the disjunctive...." (Motion at 12). According to the United States, "subsection (i) specifie[s] the requirements for production of documents and ... subsection (ii) specifie[s] the requirements for production of ESI." (*Id.*). In support of this interpretation of Rule 34(b)(2)(E), the United States relies heavily on a September 2005 Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure (the "Committee Report") and *United States v. O'Keefe*, 537 F.Supp.2d 14 (D.D.C.2008). (Motion at 12–13, 15; *see also id.*, Exh. 20). Neither authority persuasively supports the proposition that ESI productions are not subject to the organizational requirements of Rule 34(b)(2)(E)(i).

The Committee Report appears to recommend distinguishing between traditional hard copy documents on the one hand, and ESI on the other hand, in the pending 2006 revisions to Rule 34:

> Under the proposed amendment to Rule 34, electronically stored information is explicitly recognized as a category subject to discovery that is distinct from "documents" and "things." The term "docu-

ments" should not continue to be stretched to accommodate all the differences between paper and electronically stored information. Distinguishing in the rules between documents and electronically stored information makes it clear that there are differences between them important to managing discovery.... The rule provides an electronic discovery analog to the existing language that prevents massive "dumps" of disorganized documents by requiring production of documents as they are ordinarily maintained or labeled to correspond with the categories in the request. Under the proposed amended rule, absent a court order, party agreement, or a request for a specific form for production, a party may produce responsive electronically stored information in the form in which the party ordinarily maintains it or in a reasonably usable form.

(Motion, Exh. 20, at 28). The Committee Report cautions, however, that "no recommendation presented herein represents the policy of the Judicial Conference unless approved by the Judicial Conference itself." (*Id.* at 1). Therefore, whatever tentative recommendations committee members may have wished to propose, the value of the Committee Report as precedent is limited.

Furthermore, in the published notes accompanying Rule 34(b), the advisory committee specifically recognizes that the term "documents" encompasses ESI as a general rule: "[A] Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information unless discovery in the action has clearly distinguished between electronically stored information and 'documents.' " Fed.R.Civ.P. Rule 34 advisory committee's note (2006 Amendment, subdivision (a)). The notes specifically admonish that "[r]eferences to 'documents' appear[ing] in discovery rules that are not amended ... should be interpreted to include electronically stored information as circumstances warrant." *Id.*

The published notes also emphasize that ESI productions may not be randomly organized: "Rule 34(b) provides that a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond with the categories in the discovery request. The production of electronically stored information should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party. Rule 34(b) is amended to ensure similar protection for electronically stored information." *Id.* (2006 Amendment, subdivision (b)). Consequently, Rule 34, as revised, was intended to address the *organization* of ESI productions as well as their format.

The United States' reliance on *O'Keefe* is similarly misplaced. In *O'Keefe*, a criminal matter in which the court looked to the Federal Rules of Civil Procedure for guidance in determining whether the format of the United States' production of ESI was acceptable, the court briefly addressed the requirements of Rule 34(b)(2)(E) as follows:

Under Rule 34 of the Federal Rules of Civil Procedure, a distinction between documents and electronically stored information is made in terms of the form of production. As established above, a party is obligated to either produce documents as they are kept in the usual course of business or it 'must organize and label them to correspond to the categories in the request.' Fed.R.Civ.P. 34(b)(2)(E)(i). But if, as occurred here, electronically-stored information is demanded but the request does not specify a form of production, the responding party must produce the electronically-stored information in the form in which it is ordinarily maintained or in a reasonably useable form. Fed.R.Civ.P. 34(b)(2)(E)(ii).... [¶] If one were to apply these rules to this case, it appears that the government's production of the electronically stored information in PDF or TIFF format would suffice, unless defendants can show that those formats are not 'reasonably useable' and that the native format, with accompanying metadata, meet the criteria of 'reasonably useable' whereas the PDF or TIFF formats do not."

*O'Keefe*, 537 F.Supp.2d at 23. Notably, *O'Keefe* addresses only the *format* of ESI productions, not their organization. Howev-

er, to the extent that *O'Keefe* can be read to suggest that the organizational requirements set forth in Rule 34(b)(2)(E)(i) do not apply to ESI productions, that interpretation is not supported by the weight of authority.

In *MGP Ingredients, Inc. v. Mars, Inc.*, 2007 WL 3010343 (D.Kan.2007), for example, the court determined that "[t]he Advisory Committee Notes to the 2006 amendments to Rule 34 make it clear that the requirement that a party produce *documents* as they are kept in the usual course of business or organize and label them to correspond with the categories in the request applies equally to *ESI*." *Id.* at *4 n. 12 (emphasis in original). In reaching this conclusion, the court focused on the advisory notes quoted above stating that ESI productions "should be subject to comparable requirements [concerning the production of documents in the usual course of business or labeled according to the categories in the request] to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party." *Id.* (quoting Fed.R.Civ.P. 34 advisory committee's note (2006 Amendment, subdivision (b))).

■ Citing the same passage of the 2006 advisory note, the court in *QuinStreet, Inc. v. Ferguson*, 2009 WL 1789433 (W.D.Wash.2009), ordered the defendant to re-produce emails in a "reasonably readable and usable form" and to "indicate which of them responds to which Request for Production," thereby applying both subsection (i)'s labeling requirement and subsection (ii)'s format requirement to the production of ESI. *Id.* at *5. Similarly, the court in *Diesel Machinery, Inc. v. Manitowoc Crane, Inc.*, 2011 WL 677458 (D.S.D.2011), ordered the defendant to label its production of ESI "under Rule 34(b)(2)(E)(i)" to the extent that previously produced PDFs were not produced as kept in the usual course of business. *Id.* at *3. In sum, there is a broad consensus among courts that have directly considered this issue that the requirements set forth in Rule 34(b)(2)(E)(i) regarding the organization of discovery productions apply to productions of both traditional hard copy documents and ESI.

Interpreting the Federal Rules to require ESI productions to be organized in such a way as to facilitate, not hinder, the usefulness of the information produced also makes common sense. "Rule 34(b)(2)(E)(i) is meant to prevent a party from obscuring the significance of documents by giving some structure to the production." *Consolidated Rail Corp. v. Grand Trunk Western R.R. Co.*, 2009 WL 5151745, at *3 (E.D.Mich.2009) (emails were properly produced in the "usual course of business" where the producing party identified the custodian and date created and the order of production mirrored "the order that they were found on the hard drive of each document's custodian," with attachments "directly following the corresponding email"). In revising Rule 34(b), the advisory committee expressed its intent to discourage parties from raising "unnecessary obstacles for the requesting party" in the production of ESI. Fed.R.Civ.P. 34 advisory committee's notes (2006 Amendment, subdivision (b)). The Court doubts that the drafters of the amendments to the Federal rules intended to prohibit obstructionist tactics in the organization of hard copy productions but not ESI productions. Consequently, the Court finds that Rule 34(b)(2)(E)(i), which provides that parties "must produce" documents as they are kept in the usual course of business or "must label" the documents to correspond to the categories in the request, applies to productions of ESI as well as traditional hard copy documents.

**D. *The Production Of ESI Must Be Rationally Organized To Enable The Parties To Determine If Responsive Documents Have Been Produced***

Rule 34(b)(2)(E) as a whole addresses both the organization and format of ESI productions in furtherance of the larger goal of the Federal Rules to secure "the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1. As explained in *Armor Screen Corp. v. Storm Catcher, Inc.*,

> Rule 34 is generally designed to facilitate discovery of relevant information by preventing attempts to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents. A producing party fails to

meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect. While Rule 34 does not obligate a producing party to *per se* organize and label usable documents for the requesting party's convenience, a party exercising Rule 34's option to produce records as they are kept in the usual course of business should organize the documents in such a manner that the requesting party may obtain, with reasonable effort, the documents responsive to their requests.... The standard this Court will use in determining what is required will be whether the production allows the requesting party to reasonably determine what documents are responsive to its requests. If it does, the production complies with Rule 34(b)(2)(E)(i). If it does not, then the production does not comply.

*Armor Screen Corp. v. Storm Catcher, Inc.,* 2009 WL 291160, at *5 (S.D.Fla.2009). Coordinating a production to reflect the organization of ESI either as it is kept in the usual course of business or properly labeled facilitates the requesting party's ability to understand the production.

 Courts have recognized that organizing a production to reflect how the information is kept "in the usual course of business" may require the producing party to include different identifying information according to the type of document or file produced. As one court observed,

> A party demonstrates that it has produced documents in the usual course by revealing information about where the documents were maintained, who maintained them, and whether the documents came from one single source or file or from multiple sources or files. *See Nolan, LLC v. TDC Int'l Corp.,* No. 06–CV–14907–DT, 2007 WL 3408584, at *2 (E.D.Mich.2007) (Majzoub, Magistrate Judge). A party produces emails in the usual course when it arranges the responsive emails by custodian, in chronological order and with attachments, if any. *MGP Ingredients, Inc. v. Mars, Inc.,* No. 06–2318–JWL–DJW, 2007 WL 3010343, at *2 (D.Kan.2007). For non-email ESI, a party must produce the files by custodian and by the file's

location on the hard drive-directory, subdirectory, and file name. *Id.*

*Valeo Electrical Systems, Inc. v. Cleveland Die & Mfg. Co.,* 2009 WL 1803216, at *2 (E.D.Mich.2009) (applying subsection (i) to ESI production). While the specific information a producing party must provide when organizing a production "in the usual course of business" may vary in its details according to the type of document or file produced, it is clear that parties are entitled under the Federal Rules to rationally organized productions so that they may readily identify documents, including ESI, that are responsive to their production requests.

### E. The Government Must Produce ESI In Native Format Or Label The Production To Correspond To Defendants' Production Requests

Here, according to the United States, the parties agreed to produce ESI in TIFF or JPEG format and to restrict the production of metadata to a limited number of fields, none of which reflected the metadata in the native files. (Motion at 9). Instead, the parties agreed that electronic documents would be coded only with the following fields: beginning bates number, ending bates number, page count, CD volume name, producing party, and produced date. (*Id.; see also id.* Exh. 17 at 2). As such, the parties did not produce ESI in the manner in which it is kept in the usual course of business, which, at a minimum, would identify the provenance of the files and provide some context as to their meaning. Although the United States affirmed at the hearing that it has provided Defendants with custodian information for its prior productions and will presumably continue that practice for future productions, the extant production agreement still does not require the parties to include such basic identifying metadata fields as file name, attachment range, folder title and folder range, among others, all of which would be readily apparent if the ESI was produced as kept in the usual course of business.

 Unless and until the parties agree to amend their production protocol to include metadata fields sufficient to satisfy the requirement under Rule 34(b)(2)(E)(i) that doc-

uments, including ESI, be produced as they are kept in the usual course of business, the Rules require the United States (and Defendants) to organize and label their productions to correspond to the categories in the request. At the hearing, the parties estimated that the total number of Production Requests propounded by Defendants has risen to over five hundred. The Court recognizes that in future productions, identifying each Production Request to which each ESI file is responsive may possibly be a challenging and time-consuming task.

However, Defendants also explained at the hearing that as a "compromise," they previously agreed to allow the United States to reproduce its prior ESI production in native format as a substitute for a production organized in the manner in which ESI is kept in the usual course of business and in lieu of requiring the United States to label its production to correspond to the Production Requests. Because Defendants have accepted the production of ESI in native format as a satisfactory proxy for a production organized in the usual course, and because a simultaneous production in native format will provide Defendants with the metadata necessary to identify the provenance of each document and put it into its proper context, the United States may, at its option, provide Defendants with a copy of ESI in native format in any future production in lieu of labeling the production, in addition to producing ESI in TIFF or JPEG format to the Encore common repository pursuant to the parties' current production protocol.[1]

## V.

### CONCLUSION

For the reasons stated above, the United States' Motion for Review *De Novo* of the Special Master's Order is DENIED. The United States is further ORDERED to label all future ESI productions to correspond to the categories in the request or to produce the ESI in native format with metadata intact.

IT IS SO ORDERED.

---

1. The Court strongly encourages the parties to consider the alternative of a new agreement concerning which metadata fields with TIFF/JPEG formats would provide identifying information sufficient to organize an ESI production that is usable for the receiving party and to amend their production protocol accordingly. Such an agreement would allow the United States to avoid the expense of producing ESI in *both* native and TIFF/JPEG formats, should it exercise that option, and would similarly allow Defendants to avoid the expense of reviewing ESI in two different formats and cross-referencing the productions. Furthermore, TIFF or JPEG productions with embedded metadata would enable Defendants to perform the various field searches they claim are necessary to make sense of the production and would be immediately available for use as exhibits without further processing. This would likely be more useful to Defendants than a report identifying the Production Requests to which documents are responsive with no contextualizing metadata.