NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GUARDIAN MOVING AND STORAGE COMPANY, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**METROPOLITAN VAN AND STORAGE, INC,**
*Defendant*

---

2015-5132

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00030-EDK, Judge Elaine Kaplan.

---

Decided: August 22, 2016

---

JOSHUA DAVID ROGACZEWSKI, McDermott, Will & Emery LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JAMES W. KIM.

DOMENIQUE GRACE KIRCHNER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.

Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., DONALD E. KINNER.

───────────────

Before PROST, *Chief Judge,* WALLACH and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Guardian Moving and Storage Co., Inc. ("Guardian") appeals from a decision of the United States Court of Federal Claims ("Claims Court") entering judgment in favor of the United States ("Government") and defendant Metropolitan Van and Storage, Inc. ("MVS"). *See Guardian Moving & Storage Co. v. United States*, 122 Fed. Cl. 117, 139 (2015). In a series of bid protests, Guardian challenged the decision of the United States Transportation Command ("USTC" or "agency") to award a contract to MVS for non-temporary storage of household goods ("Goods") and unaccompanied baggage ("Baggage"). Of particular relevance to this appeal are Guardian's First Post-Award and Pre-Award Protests. *See id.* at 124–26.

In response to Guardian's First Post-Award Protest, the USTC decided to institute corrective action. *Id.* at 124. However, before conclusion of the corrective action, Guardian filed a Pre-Award Protest, asserting that the USTC's decision to institute corrective action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 125.

In light of the corrective action, the Claims Court determined that Guardian's First Post-Award Protest was moot, and accordingly, dismissed that protest. *Id.* at 127. As to Guardian's Pre-Award Protest, the Claims Court denied Guardian's motion for judgment on the administrative record and, in turn, granted the Government's and MVS's cross-motions for judgment on the administrative record. *Id.* at 127. We affirm.

BACKGROUND

I. Facts

A. The Solicitation

In July 2014, the USTC, a division of the Department of Defense ("DoD"), issued a competitive solicitation for a Goods and Baggage storage contract, in which the contractor would provide non-temporary storage of retrograde containerized Goods and Baggage belonging to military-service members and DoD civilian employees on the East and West Coasts of the United States. *See* J.A. 308–13.

The solicitation allowed offerors to "submit pricing for the East Coast, . . . the West Coast, and/or the East and West Coast Combined." J.A. 401. The solicitation explained that the agency planned to "conduct a low price technically acceptable . . . source selection in which competing offers will be evaluated against . . . Price [and] Technical Capability." J.A. 401.

Offerors' technical capabilities would be measured against the solicitation criteria, and offerors would be considered technically acceptable only if they demonstrated satisfaction of all criteria. *See* J.A. 526 (stating that "[i]f any technical subfactor is rated as [u]nacceptable, the overall technical rating will be [u]nacceptable"). Specifically, the solicitation required that proposals consist of three sections: Part I–Request for Proposal Documents; Part II–Technical Proposal; and Part III–Pricing Proposal. *See* J.A. 400.

In Part I, offerors were instructed to provide, among other things, (1) a "[f]lood plain report from the Federal Emergency Management Agency, the United States Army Corps of Engineers[,] or [a] disinterested third party professional engineer/surveyor" ("flood plain report requirement"); and (2) "[d]ocumentation signed by the Local Fire Marshal[] (or authorized representative) affirming

that the facility meets all local codes and ordinances dated within [thirty] days of [the] proposal submission date" ("fire marshal documentation requirement").  J.A. 400.

In Part II, offerors were required to describe their respective plans for achieving the objectives provided in the Performance Work Statement ("PWS").  *See* J.A. 400–01, 404.  For example, subparagraph 1.3.3.1.2 of the PWS included the following requirements:  (1) "[a]ll storage facilities shall provide firewall separation for every three . . . million gross pounds of stored personal property lots," and (2) "[f]ire aisles shall meet local fire regulations as evidenced in the approved Fire Marshal Certification for all storage facilities" ("firewall/fire aisle requirement").  J.A. 407.

In accordance with Federal Acquisition Regulation ("FAR") 52.212-2(a), the agency evaluated the proposals via the following methodology:  First, the agency would rank East and West Coast offers by price and evaluate the offers for technical compliance, commencing with the lowest-price offer and ending when it determined the lowest-price, technically acceptable offer for each coast; second, the agency would add the prices of the lowest-price, technically acceptable offer for the East and West Coast to determine the baseline against which offerors for a combined contract (i.e., offerors submitting both East and West Coast bids) would be evaluated; third, the agency would rank combined-coast offers by price.  *See* J.A. 402.  If the lowest-price, technically acceptable combined contract offer was less than or equal to the baseline, "the evaluation process stops at this point," and the Goods and Baggage contract would be awarded to that offeror "without further consideration of any other offers."  J.A. 402.  Conversely, if no combined offer was sufficiently low and technically acceptable, the agency would award the East Coast Goods and Baggage storage contract and the

West Coast Goods and Baggage storage contract to the offerors identified in the first step. *See* J.A. 402.

## B. Initial Proposals

Guardian, the East Coast incumbent, submitted proposals for each coast and a combined proposal. *See* J.A. 509–14. Although the USTC found Guardian's East Coast Proposal to be within the competitive range, the agency determined that the proposal's "[t]echnical [c]apability was unacceptable." J.A. 850. After discussions, the agency requested, and Guardian submitted, a final proposal revision for the East Coast ("First East Coast Final Proposal Revision"). J.A. 856. Upon submission of the revision, Guardian's "technical volume was [re-]evaluated and received a rating of [a]cceptable." J.A. 938.

MVS, the West Coast incumbent, submitted a West Coast proposal and a combined proposal. *See* J.A. 515–16 (West Coast proposal), 666–67 (combined proposal). After reviewing MVS's proposals, the USTC requested clarification regarding certain aspects of the proposal. *See* J.A. 911. MVS submitted a response addressing the agency's inquiries. *See* J.A. 908–10.

## C. Award to MVS

Upon conclusion of its evaluation, the USTC determined that Guardian submitted the lowest-price, technically acceptable East Coast proposal and that MVS submitted the lowest-price, technically acceptable West Coast proposal. *See* J.A. 931–32. However, the agency concluded that the total proposed price of MVS's combined proposal was lower than the aggregated price of Guardian's East Coast proposal and MVS's West Coast proposal. *See* J.A. 937–38. Accordingly, pursuant to the methodology established in the solicitation, the agency awarded the contract for the East and West Coasts combined to MVS. *See* J.A. 937–39.

## II. Procedural Posture

### A. Guardian's First Post-Award Protest and the USTC's Corrective Action

After the USTC awarded the contract to MVS, on January 12, 2015, Guardian filed a complaint in the Claims Court protesting this decision. *Guardian*, 122 Fed. Cl. at 124. Guardian subsequently filed a Motion for Judgment on the Administrative Record ("First MJAR"), contending that MVS's "proposal was unacceptable and ineligible for award." *Id.* (restating Guardian's arguments, including that MVS's proposal did not satisfy the solicitation's fire marshal documentation requirement).

In response to Guardian's protest, on February 10, 2015, the USTC took corrective action and "open[ed] technical discussions for [the] subject solicitation." J.A. 946. Upon the agency's re-evaluation of the proposals, the USTC determined that: (1) Guardian's First East Coast Final Proposal Revision was unacceptable because it failed to satisfy the solicitation's flood plain documentation requirement, *see* J.A. 944; (2) MVS's West Coast proposal did not satisfy the solicitation's firewall/fire aisle and flood plain requirements, *see* J.A. 947–48; and (3) MVS's combined proposal also did not satisfy the firewall/fire aisle requirement, and did not conform to the fire marshal documentation and flood plain report requirements, *see* J.A. 950–51.

Following the USTC's decision to institute corrective action, Guardian revised its initial West Coast proposal and its First East Coast Final Proposal Revision ("Second East Coast Final Proposal Revision"), which included flood plain reports from [a] "disinterested third party professional surveyor[]." J.A. 962. Similarly, MVS revised its West Coast proposal and its combined proposal ("MVS's Final Combined Proposal Revision"). J.A. 1043–71.

## B. Guardian's Pre-Award Protest

Before the agency completed the corrective action, "Guardian filed a motion for leave to file an amended complaint to include a [P]re-[A]ward [P]rotest of the agency's corrective action." *Guardian*, 122 Fed. Cl. at 125. Guardian's Amended Complaint disputed the agency's determination that its First East Coast Final Proposal Revision was unacceptable because it did not satisfy the solicitation's flood plain documentation requirement. *See id.* (asserting that the agency "previously found [its flood plain] documentation . . . acceptable in two separate procurements" (internal quotation marks and citation omitted)). Accordingly, Guardian argued that the agency's decision to institute the corrective action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.*

In addition to its Amended Complaint, Guardian filed a Second Motion for Judgment on the Administrative Record ("Second MJAR"), raising, in part, the same arguments it proffered in contesting the agency's decision to institute corrective action, and embroidering on the claims presented in its Pre-Award Protest. *Id.* at 125–26.

In response, the Government filed a motion to dismiss Guardian's Amended Complaint, asserting, among other arguments, that its decision to institute corrective action "rendered Guardian's [First Post-Award Protest] moot." *Id.* at 126. As to Guardian's Second MJAR, the Government argued that it "was entitled to judgment upon the administrative record because Guardian . . . failed to demonstrate that the agency acted unlawfully or unreasonably in awarding the original contract to MVS." *Id.*

## C. Result of Corrective Action and Claims Court's Decision

On April 30, 2015, the USTC notified the Claims Court that it had completed the corrective action. *Id.* The

USTC determined that MVS's Final Combined Proposal Revision was the lowest-price, technically-acceptable proposal, and once again awarded the contract for the combined coasts to MVS.[1] *See* J.A. 1194–95.

In June 2015, the Claims Court granted the Government's motion to dismiss Guardian's First Post-Award Protest, finding that the agency's decision to institute corrective action moots that protest. *Guardian*, 122 Fed. Cl. at 127–30. As to Guardian's Pre-Award Protest, the Claims Court denied Guardian's Second MJAR and granted the Government's and MVS's cross-motions for judgment on the administrative record. *Id.* at 127.

Guardian appeals. This court has jurisdiction to review the Claims Court's final judgment pursuant to 28 U.S.C. § 1295(a)(3) (2012).

## DISCUSSION

On appeal, Guardian contests the Claims Court's decision dismissing as moot its First Post-Award Protest. *See* Guardian Br. 24 (asserting that the USTC's "corrective action was unnecessary, prejudiced Guardian, and did not render Guardian's protest moot" (capitalization modified)). For Guardian to challenge that decision, Guardian must show that its initial proposal, specifically, its First East Coast Final Proposal Revision, satisfied all of the requirements of the solicitation and, as a result, that it, as opposed to MVS, should have been awarded the Goods and Baggage storage contract.

---

[1]    Guardian also filed a Second Post-Award Protest challenging the agency's decision to again award MVS the solicitation upon conclusion of the corrective action. *Id.* at 126–27. However, the Claims Court's decision as to Guardian's Second Post-Award Protest is not at issue because Guardian does not appeal that decision.

Accordingly, before we address whether the USTC's decision to institute corrective action moots Guardian's First Post-Award Protest, we must first address the Claims Court's Pre-Award Protest decision, which denied Guardian's motion for judgment on the administrative record (Guardian's Second MJAR), and found that its "claim that the [USTC] lacked a rational basis for finding its proposal unacceptable upon re[-]evaluaiton [was] without merit." *Guardian*, 122 Fed. Cl. at 132.

## I. Pre-Award Protest

### A. Standard of Review

This court reviews the Claims Court's findings of fact for clear error, *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005), and we review "[t]he [Claims Court's] determination on the legal issue of the [G]overnment's conduct, in a grant of judgment upon the administrative record, without deference," *id.* at 1354. "This means that we apply the arbitrary and capricious standard [set forth in] § 706 [of the Administrative Procedure Act ('APA')] anew, conducting the same analysis as the [Claims Court]." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Under this standard, we determine whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2012).

### B. Guardian's Initial Flood Plain Report Did Not Satisfy the Solicitation's Flood Plain Requirement

The gravamen of Guardian's Pre-Award Protest is that, upon finding that certain aspects of MVS's proposals were technically deficient, the Claims Court should have proscribed the USTC from instituting corrective action and ordered the USTC to award the contract to Guardian. *See* Guardian Br. 27 ("[T]he corrective-action process instituted by [the agency] was neither necessary nor

required.  It . . . deprive[d] Guardian of the contract that its initial proposal earned.  The [Claims Court] had ample power to correct that error.").

Guardian's contention relies on two incorrect assumptions.  First, Guardian's argument assumes the solicitation cabins the agency's authority to re[-]evaluate proposals and to correct prior evaluation errors.  It cannot however, point to any language in the solicitation that does so.  Contrary to Guardian's contention, agencies are "allowed the discretion to review their own conclusions if they conclude a mistake has been made, or if further inquiry appears appropriate, provided the re-evaluation conforms with the solicitation, including any modifications to the solicitation and the evaluation process is conducted in a manner fair to all offerors."  *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 569 (2012); *see also ManTech Telecomm. & Info. Sys. Corp. v .United States*, 49 Fed. Cl. 57, 71 (2002) ("[I]n a negotiated procurement, [if] an offeror's proposal does not comply with the solicitation's requirements, an agency is not required to eliminate the awardee from the competition, but may permit it to correct its proposal" (internal quotation marks and citation omitted)).

Second, Guardian's argument relies on the assumption that its First East Coast Final Proposal Revision was technically acceptable.  *See* Guardian Br. 20.  Part I of the solicitation is titled "Request for Proposal Documents."  Under subsection (g) of Part I, offerors must submit a "[f]lood plain report from the Federal Emergency Management Agency, the United States Army Corps of Engineers[,] or [a] disinterested third party professional engineer/surveyor."  J.A. 400.  Guardian sought to satisfy this requirement via submission of a form completed by CoreLogic Flood Services ("CoreLogic"), which, according to Guardian, is "the largest provider of Flood Zone Determinations to the mortgage industry."  Guardian Br. 8 n.1 (quotation marks and citation omitted).

The agency determined that "Guardian's proposal was unacceptable because its flood plain report did not meet the solicitation's requirements," a determination the Claims Court upheld as "rational." *Guardian*, 122 Fed. Cl. at 131. Specifically, the Claims Court determined "Guardian submitted a form . . . *not prepared by one of the three entities specified in the solicitation.*" *Id.* at 132 (emphasis added).

Guardian contests the Claims Court's determination, and argues that "CoreLogic . . . constitutes a disinterested third party professional engineer/surveyor" and, that the form completed by CoreLogic satisfied the flood plain report requirement of the solicitation. Guardian Br. 21 (internal quotation marks omitted). Whether CoreLogic is a disinterested third party professional engineer/surveyor raises a question of fact reviewed for clear error. *See Bannum*, 404 F.3d at 1354.

The Claims Court did not clearly err in finding that Guardian's flood plain report did not satisfy the relevant provision of the solicitation—in fact, it is compelled by the factual record. CoreLogic is "recognized on [the Federal Emergency Management Agency's] website as a Flood Zone Determination *Company*." *See Guardian*, 122 Fed. Cl. at 131 (emphasis added) (internal quotation marks and citation omitted). However, only "individuals" can be professional engineers/surveyors, and each state possesses a licensing board that establishes laws regarding how individuals can obtain engineering and surveying licensure. *See Value of licensure, Nat'l Council of Exam'rs for Eng'g and Surveying*, http://ncees.org/licensure/ (last visited Aug. 11, 2016) (asserting that "[p]rofessional licensure protects the public by enforcing standards that restrict practice to qualified *individuals*" (emphasis added)). "'[P]rofessional Engineer' connotes and identifies a *person* with a high degree of learning, experience[,] and competence in mathematics, physics[,] and chemistry." *State ex rel. Wis. Registration Bd. of Architects & Prof'l*

*Eng'rs v. T.V. Eng'rs of Kenosha,* 141 N.W.2d 235, 239 (Wis. 1966); *see also Anglin Eng'g Co. v. J.E. Barry Co.,* 912 S.W.2d 633, 637 (Mo. Ct. App. 1995); N.J. Stat. Ann. § 45:8–27 (West 1990) ("In order to safeguard life, health and property, and promote the public welfare, any *person* practicing or offering to practice professional engineering or professional land surveying in this State shall hereafter be required to submit evidence that he is qualified so to practice and shall be licensed as hereinafter provided." (emphasis added)). Moreover, although Guardian asserts that this was not a "material element" of the solicitation, *see* Oral Arg. at 8:08–8:10, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-5132.mp3, Guardian acceded to its materiality when it subsequently submitted flood plain reports "signed by a disinterested third party professional land surveyor, Mr. Dennis Taflambas, [of] DKT Associates," J.A. 1200.

Guardian does not cite to contrary evidence to support its assertion that the flood plain reports were signed by a disinterested third party professional engineer/surveyor employed by CoreLogic. *See* J.A. 444–47 (showing that Guardian's initial flood plain report was signed by CoreLogic in its capacity as a company, as opposed to an individual professional engineer/surveyor).

## II. The USTC's Corrective Action Moots Guardian's First Post-Award Protest

The Claims Court's conclusion that the agency's decision to institute corrective action moots Guardian's First Post-Award Protest is a legal one that we review de novo. *See Glendale Fed. Bank, FSB v. United States,* 239 F.3d 1374, 1379 (Fed. Cir. 2001).

By virtue of our decision regarding Guardian's Pre-Award Protest, it necessarily follows that the Claims Court correctly determined that the corrective action moots Guardian's First Post-Award Protest. Article III of the Constitution proscribes the power of federal courts to

"Cases" and "Controversies." U.S. Const. art. I, § 2, cl. 1. "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citation omitted). The "case-or-controversy" requirement must be present "through all stages of federal judicial proceedings." *Id.* Absent this requirement, as a general matter, a case becomes moot "[w]hen, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue." *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007).

Because Guardian has not shown that it should have been awarded the initial solicitation, the only other possible relief it could be entitled to is for "'the [agency] to conduct a fair reevaluation of the existing proposals, and award a new contract, or contracts, under the terms and conditions of the [s]olicitation.'" *Guardian*, 122 Fed. Cl. at 128 (quoting Guardian's Compl. at 27). In response to its First Post-Award Protest, the agency, by virtue of its decision to institute corrective action, provided this relief. In instituting the corrective action, the agency provided both offerors the opportunity to submit final proposal revisions, *see* J.A. 947, reevaluated the revised proposals, and issued a new award, *see* J.A. 937. "[I]f an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever . . . , the [case] must be dismissed." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal quotation marks and citation omitted). Here, the corrective action extinguished the existing controversy—i.e., whether MVS's proposal was technically acceptable at the time of Guardian's First Post-Award Protest. Accordingly, we affirm the Claims Court's de-

termination that the corrective action moots Guardian's First Post-Award Protest.

## CONCLUSION

For the foregoing reasons, we affirm the final judgment of the United States Court of Federal Claims, denying Guardian's motion for judgment on the administrative record filed in support of its Pre-Award Protest, and dismissing as moot Guardian's First Post-Award Protest.

### **AFFIRMED**